Samantha G. HOLLAWAY, Appellant

v.

DIRECT GENERAL INSURANCE
COMPANY OF MISSISSIPPI,
INC., Appellee

2014-SC-000758-DG

Supreme Court of Kentucky.

RENDERED: SEPTEMBER 22, 2016

COUNSEL FOR APPELLANT: Matthew David Ellison, Fowler Bell, PLLC.

COUNSEL FOR APPELLEE: Perry Adanick, Quinteros Prieto Wood & Boyer, P.A.

COUNSEL FOR AMICUS CURIAE, Ronald L. Green, Green, Chesnut & Hughes, PLLC., Mendel Austin Mehr, Mehr Fairbanks Trial Lawyers, PLLC

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

In order to prevail on a third-party bad-faith claim under Kentucky's Unfair Claims Settlement Practices Act, a plaintiff must prove not only the insurer's unreasonable failure to respond to a legitimate claim to recover policy proceeds but also must produce evidence that the insurer acted recklessly indifferent to the plaintiff's right to recover. The Court of Appeals affirmed the trial court's summary judgment in favor of the insurer in the present case. On discretionary review, we affirm the decision of the Court of Appeals because we agree that the plaintiff failed to present evidence that could possibly succeed at trial.

## FACTUAL AND PROCEDURAL BACKGROUND.

This bad-faith insurance dispute began as a low-speed automobile collision in an apartment complex parking lot. The accident involved a vehicle owned and driven by Harry Sykes III and a vehicle owned by Samantha Hollaway and driven by Danny Bartlett. Both parties rely on their own accounts of the series of events leading up to the accident.

According to Hollaway, Bartlett was driving Hollaway's car, with Hollaway in the passenger seat, and the vehicle was navigating through the parking lot of an apartment complex. They spotted Sykes approximately 20-25 feet away, backing out of a parking space. In their version of the story, Bartlett stopped the vehicle to allow Sykes to continue backing out of the parking spot. But as Sykes backed out, he angled his vehicle toward them and kept coming backward until the rear end of his vehicle hit the front end of Hollaway's car. And it is Bartlett's position that he could do nothing to avoid the collision because Sykes had backed out too quickly.

Sykes's story differs. He claims he was slowly backing out of the parking spot and was preparing to drive forward when Hollaway's car struck the rear end of his vehicle. He claims that Hollaway's car—driven by Bartlett—just kept coming, traveling in the wrong lane and rounding a nearby curve. Sykes also testified he could not avoid a collision because the vehicle was approaching him too quickly.

Despite the contradictory accounting of the cause of the accident itself, all parties do agree to a number of other facts about the accident. First, Sykes, Bartlett, and Hollaway were all wearing their seatbelts at the time of the accident. No airbags were deployed. Sykes's car had no visible damage, while Hollaway's vehicle only sustained $463.62 in property damage to the

left fender on the driver's side. Both vehicles were drivable and able to leave the scene without any assistance. And finally, the police were never asked to investigate the accident or the scene.

Following the accident, Hollaway sought medical treatment. She alleges the accident injured her back and hip and forced her to undergo extensive physical therapy. She anticipated that she would exhaust her no-fault insurance benefits in short order. And she claims the injuries allegedly sustained in the accident caused her to lose her job as a nurse's assistant because she could not physically perform her work responsibilities.

Sykes was insured by Direct General Insurance Company of Mississippi, Inc. for the state-required automobile liability insurance limits of $25,000 per person. Hollaway sought compensation from Direct General for both bodily and property damage as a result of the accident. Direct General investigated the accident and quickly learned of the contradictory accounts ·for how the accident was caused. The record indicates that Direct General may have initially concluded that its insured, Sykes, was liable for the accident, and settled Hollaway's property damage claim for $463.42. But Hollaway's bodily injury claim would prove more contentious.

Eventually, Hollaway's no-fault benefits were exhausted, and she demanded $125,000 in compensation from Direct General (or the policy limits). She provided the insurer with medical records, billing information, and formal documentation of wage loss after leaving her job. Eventually, Direct General offered to settle her claim for $5,000. She rejected this, and again demanded $125,000 compensation for her injuries that were allegedly the result of the accident. Direct General made no counter-offer and stood by its initial $5,000 offer to settle.

Following the breakdown of settlement negotiations, Hollaway filed suit. She asserted three separate claims: (1) a claim of negligence against Sykes; (2) a claim for underinsured motorist (UIM) benefits against her own insurer, Allstate; and (3) a third-party bad faith claim against Direct General under the Kentucky Unfair Claims Settlement Practices Act[1] on the theory that Direct General had failed to "reasonably evaluate, investigate, and negotiate a settlement of her bodily injury claim." The first two claims have been settled and dismissed, but the bad-faith investigation claim persists.

At the close of discovery, Direct General moved for summary judgment on the theory that it had not acted in bad faith because it had·the right to insist that Hollaway prove her case that the insurer was liable before it had a duty to offer her any settlement. Direct General pointed to the disputed nature of how the accident was caused, the ·lack of evidence that the accident caused Hollaway's injuries, and Hollaway's preexisting injuries to the same area of her body where she was allegedly injured from the accident. Hollaway rebutted this position by arguing that Direct General paid her $463.42 in property damage and settled her bodily injury claim for $22,500, and that it had failed to "investigate, negotiate, and attempt to settle the claim in a fair and reasonable manner," as insurers are directed to do under the KUCSPA.[2]

The trial court ultimately granted summary judgment in favor of Direct General, primarily by finding that a legitimate dispute existed regarding who had been liable for the accident *and* what injuries to Holl-

---

1.  KRS 304.12–230.

2.  *Farmland Mutual Insurance Co. v. Johnson,* 36 S.W.3d 368 375 (Ky.2000).

away were caused by the accident. Because liability and causation were legitimately disputed, the trial court ruled that Direct General could not have acted in bad faith as a matter of law.

Hollaway appealed the trial court's ruling to the Court of Appeals, which affirmed the trial court, albeit eccentrically. It began its analysis by dismissing two sources of evidence, which it claimed Hollaway relied upon: her answers to her interrogatories that were supposedly unsworn and unsigned, and information from a bad-faith expert witness that the panel determined was insufficient to be considered an affidavit entered to counter Direct General's motion for summary judgment. The panel then affirmed the lower court's summary judgment by identifying that an insurer has tort liability for bad faith only if its liability for paying the claim in question was "beyond dispute."[3] The only evidence Hollaway presented in support of her bad faith claim is the $463.42 settlement for property damage and the $22,500 settlement for her bodily injury claim from the accident. The panel concluded that in Kentucky, "a settlement is not evidence of legal liability, nor does it qualify as an admission of fault." So the panel held that liability was not "beyond dispute" and summary judgment in favor of Direct General was proper below.

Hollaway then petitioned this Court for discretionary review. We elected to review this case to determine whether the Court of Appeals appropriately dismissed Hollaway's evidence against summary judgment from its consideration, and whether, in light of the totality of the evidence presented for review, the summary judgment

entered in favor of Direct General was appropriate.

## ANALYSIS.

### Standard of Review.

■■■■ On appeal from summary judgment granted below, we determine whether "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] All factual ambiguities are viewed in a light most favorable to the nonmoving party.[5] And we review all legal conclusions de novo; the lower courts' opinions are entitled to no deference.

### Evidentiary Analysis.

In its opinion affirming the trial court's summary judgment, the Court of Appeals refused to consider two pieces of proof as affirmative evidence against Direct General's motion for summary judgment: Hollaway's answers to interrogatories and the bad faith "expert report" from Bill Woolums. The panel took issue with use of Hollaway's interrogatory answers because it determined those answers were unsigned and unsworn, as required by CR 33.01(2). And it dismissed the expert report from consideration because it did not consider the report a sworn affidavit reflecting facts in the record, which CR 56.05 requires, and the panel even questioned whether the report had in fact been drafted by Hollaway's attorney and not the expert himself.

**3.** *See Coomer v. Phelps,* 172 S.W.3d 389, 395 (Ky.2005).

**4.** Kentucky Rules of Civil Procedure (CR) 56.03.

**5.** *See Hammons v. Hammons,* 327 S.W.3d 444, 448 (Ky.2010).

Hollaway points out to us that information from these discovery responses had actually been attached to *Direct General's* motion for summary judgment tendered to the trial court. She also disputes the appellate panel's conclusion that her responses were unverified. Although Direct General attached, perhaps accidentally, an unverified copy to its motion, Hollaway was able to produce a verified response in her petition for rehearing in the Court of Appeals. She believes the panel's dismissal of these particular pieces of information was a strong motivating factor in the panel's decision to affirm the summary judgment against her in the trial court.

This evidentiary issue did not arise in the trial court, and it is readily apparent it played no role in the decision to award Direct General summary judgment. Instead, the trial court was able to conclude there was no genuine dispute of material fact in this case, and as a matter of law, Hollaway could not present a colorable third-party claim of bad faith against Direct General. The Court of Appeals certainly took a creative detour in eliminating these pieces of evidence from its consideration. And we no doubt question the prudence of the appellate panel's detour into deciding each party's full compliance with the Kentucky Rules of Civil Procedure—issues of technical compliance neither raised by either party nor ruled upon by the trial court. But because we independently agree that summary judgment in favor of the insurer was proper, whatever error the Court of Appeals may have committed in this evidentiary foray, we are confident it was harmless. So we simply decline to address this particular issue and vacate that portion of the Court of Appeals' position.

**6.** KRS 304.12–230(1).

**7.** KRS 304.12–230(3).

## Hollaway Fails to Make a Colorable Third-Party Bad-Faith Claim

The KUCSPA comprehensively defines misleading insurance investigative practices and prohibits insurers from engaging in certain activities in the course of settling claims. Among these prohibited activities are, among others, "misrepresenting pertinent facts or insurance policy provisions,"[6] "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies,"[7] and "refusing to pay claims without conducting a reasonable investigation based upon all available information."[8] Perhaps most relevant to this case, the Act bars insurers from "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."[9]

The gravamen of Hollaway's claim is, of course, that through Direct General's actions during the early stages of its investigation, and through offers to settle both her properly and bodily injury claims, the insurer admitted liability but failed to promptly offer her a fair settlement for her claim. So her position is that a genuine issue of material fact indeed existed below, and the trial court improperly entered summary judgment in favor of Direct General.

Despite the relatively straightforward directives in the KUCSPA regarding insurers' behavior in the course of investigating and settling claims, Kentucky law still imposes a tall burden of proof on plaintiffs seeking to recover on a theory of bad faith. To succeed on her third-party suit, our decision in *Wittmer v. Jones* requires Hollaway to show that: (1) the insurer must be obligated to pay the claim

**8.** KRS 304.12–230(4).

**9.** KRS 304.12–230(6).

under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; *and* (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed."[10] Proof of this third element requires evidence that the insurer's conduct was outrageous, or because of his reckless indifference to the rights of others.[11]

■ . Use of the conjunctive "and" in our *Wittmer test* is quite revealing—it combines the individual items of *Wittmer*, creating a prerequisite that all elements of the test must be established to prevail on a third-party claim for bad faith under the KUCSPA. So even under Hollaway's basic theory of the case she must go beyond simply showing Direct General's liability, she must also proffer evidence that the insurer's motive was recklessly indifferent to her right to recover. Because she bears the burden of establishing all three elements, to defeat summary judgment she must offer proof for all three. With that firmly in mind, we agree with the trial court that Hollaway failed to present a case that could possibly succeed at trial.

Beginning with liability under the policy, we think it is important to clarify that realistically there are two distinct questions of law in assessing Direct General's duty to compensate Hollaway. First, and most obviously, is liability for the accident itself—whether the parking lot accident was a result of Direct General's insured's fault, thereby obligating the insurer to compensate Hollaway for damages as a result of the accident. This form of liability formed the basis for the trial court's determination that there was a genuine dispute as to liability, rendering Hollaway's bad-faith claim a de facto nullity.

■ Both the trial court and the Court of Appeals agreed that fault for the accident itself is debatable. Hollaway points primarily to early investigative notes from Direct General attributing fault to its insured, in addition to its offers to settle her negligence claims, as proof that the insurer admitted liability. But sure enough, the Court of Appeals rightly recognized that under Kentucky law, settlements are not evidence of legal liability, nor do they qualify as admissions of fault.[12] As for Direct General's initial evaluations and characterizations of fault, we agree that the insurer initially appeared to take responsibility for the accident, and attributed fault to its insured. But we also accept Direct General's proposition that impressions may change as investigations proceed. We will not attribute changing positions as a result of new information or evidence to bad-faith failure to settle claims. Such a stance would stand contrary to our quest for truth and would likely lead to obfuscation in the early stages of accident investigations. Candidness in the investigatory process should be encouraged; a rule disallowing an insurer to evolve its position as the investigation unfolds cuts against our goal of speedy, fair, and transparent investigation. Fortunately, because of the second

10. 864 S.W.2d 885, 890 (Ky.1993) (emphasis added).

11. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky.1997). We recognize that the *Glass* standard included a third potential mental state premised on an insurer's "evil motive." Use of the word "evil" invokes overly sinister connotations that, in the mind of the casual speaker, are not necessarily synonymous with "outrageous" or "recklessly indifferent." Because of the confusion we fear continued reliance on the "evil motive" standard will cause future litigants, we no longer consider that part of this analysis.

12. *See Combs v. Stortz*, 276 S.W.3d 282, 291 (Ky.App.2009). *See also Ashland Oil & Refining Co. v. General Tel. Co.*, 462 S.W.2d 190, 194 (Ky.1970).

form of liability invoked in this case, Direct General's early impressions of the case are not dispositive.

The second, and more important, dispute between Hollaway and Direct General is the extent and severity of her alleged injuries from the accident—liability Direct General has seriously contested from the outset. Even if we are to accept Hollaway's theory that Direct General admitted its insured's fault for causing the accident, we are not compelled to accept the premise that Direct General accepts responsibility for causing her claimed damages as well. It is well-documented in the record that Hollaway has a history of physical complaints not dissimilar to the physical complaints she attributes to the accident. While Direct General may waffle on its impressions of who caused the accident in the parking lot, it consistently characterized the incident and its impact on Holloway as a "low impact accident." The insurer also noted that Hollaway's work as a nurse's assistant predisposes her to this type of injury. And a representative's characterization of Hollaway's $125,000 demand as "crazy nuts"—a statement Hollaway frequently invokes as somehow indicative of bad faith negotiations—further highlights that Direct General clearly contests its own liability for the damages Hollaway claims.

Based on the continued settlement negotiations between the two parties, we agree with the trial court and the Court of Appeals that Direct General was unwilling to concede liability for the accident—particularly with regard to its own insured's fault in causing the injuries Hollaway claimed to sustain from the accident. Because Direct General's absolute duty to pay her claim is not clearly established, this alone would be enough to deny her bad-faith claim under *Wittmer.* But if that is not enough, we are doubly sure Direct General does not meet the malevolent intent required under *Wittmer* to be susceptible for bad faith under Kentucky law.

■ A bad faith claim under Kentucky law is, essentially, a punitive action. The tort of bad faith is non-existent under our law, unless the underlying conduct is sufficient to warrant punitive damages. Absent evidence of punitive conduct, an insurer is entitled to a directed verdict for any bad-faith claim levied against it. This explains why KUCSPA requires plaintiffs to prove that an insurer's actions during resolution of the claim were outrageous, or because of the defendant's reckless indifference to the rights of others.[13]

■ Hollaway fails to offer any proof of intentional misconduct, instead suggesting that the process was a matter of interpretation, better fit for jury determination than summary judgment. Direct General's lack of interest in her initial six-figure demand, and the insurer's preference of waiting until she returned to work to complete its investigation of her claim are the main points Hollaway raises to support this inference. But even that only invokes speculation. She offers nothing to support the assertion that Direct General never intended to negotiate with her fairly to reach a settlement for her claims. The KUCSPA only requires insurers to negotiate reasonably with respect to claims; it does not require them to acquiesce to a third party's demands. We are confident that the lower courts were correct in determining that summary judgment in favor of Direct General is appropriate at this juncture.

### CONCLUSION.

Because Hollaway failed to present a colorable bad-faith claim under KUCSPA,

---

13. *Glass,* 996 S.W.2d at 452.

we affirm the summary judgment below in favor of Direct General.

All sitting. All concur.