**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0074n.06

Case No. 18-5634

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Feb 03, 2020

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| EVEREST STABLES, INC., | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| WILLIAM C. RAMBICURE; RAMBICURE | ) | THE WESTERN DISTRICT OF |
| LAW GROUP, PSC; MILLER & WELLS, | ) | KENTUCKY |
| PLLC; ZURICH AMERICAN INSURANCE | ) | |
| CO., | ) | |
| | ) | |
|     Defendants-Appellees. | ) | |

BEFORE: GUY, SUTTON, and GRIFFIN, Circuit Judges.

SUTTON, Circuit Judge. One lawsuit sometimes leads to another. In 2014, we heard a dispute between Everest Stables and the business it hired to sell over a hundred of its horses. Everest lost. Trying to soften the blow, it sued William Rambicure, the lawyer it retained to create the relationship between itself and the business, as well as his prior law firm, his present firm, and the malpractice insurer of his current firm. The district court correctly dismissed the claims against the insurer because its policy did not cover Rambicure's actions at his previous firm. But it incorrectly decided the remaining claims for Rambicure and the law firms on the ground that Everest could not prove any harm resulting from Rambicure's alleged malpractice. We affirm in part and vacate in part.

I.

In 2008, Everest Stables contracted with Crestwood Farm Bloodstock to sell Everest's horses at auctions. Crestwood would board the horses while preparing them for sale and would receive commissions of 25% to 50% of the sale price as its compensation. Rambicure, who worked for Rambicure Law, represented Everest in creating the agreement.

Trouble started in early 2009 when Crestwood sold Everest's most successful horse for less than Everest expected. Next time Crestwood put up an Everest horse for auction, Everest, on Rambicure's advice, sent another agent to keep the horse from selling for too little. At the auction, a prospective buyer bid $875,000. Everest's agent decided that was too low and bid $900,000, effectively setting a reserve. No one topped Everest's bid, and the sale failed.

Crestwood believed that Everest breached their agreement by bidding at the auction, depriving Crestwood of the commission it would have received on the sale. Crestwood continued selling Everest's horses and withheld portions of their sale prices to make up for the 25% commission (amounting to $219,513.89) it would have made from selling the horse had the $875,000 bid gone through.

Crestwood and Everest sued each other. Crestwood claimed Everest breached their agreement by bidding on its own horse. *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 864 F. Supp. 2d 629, 633–34 (E.D. Ky. 2012). Everest claimed Crestwood committed fraud by retaining money from other horses' sales. *Id.* Once consolidated, the district court decided, and we agreed, that Crestwood had the better of the dispute. The contract prohibited Everest from setting a reserve by bidding on its own horses, meaning Crestwood rightfully paid itself a commission on the failed sale by withholding proceeds from other horses' sales. *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 751 F.3d 434, 445–46 (6th Cir. 2014).

In April 2012, between the district court's ruling and ours, Everest fired Rambicure. Soon after, Rambicure left his own firm and joined Miller & Wells.

In August 2014, after its loss before this court, Everest notified Rambicure that it planned to sue him for malpractice. He told Miller & Wells, who told its insurer, Zurich. Zurich contacted Everest to acknowledge the claim and seek more information about it. Everest provided the requested information. In December 2014, Zurich notified Everest that the policy did not cover Everest's claim against Rambicure.

In this lawsuit, Everest alleges Rambicure committed malpractice when he prepared the Crestwood contract. The court granted summary judgment to Rambicure and Rambicure Law on a ground no one had pointed out: Everest's failure to show damages caused by the malpractice. It also ruled for Rambicure and Rambicure Law as a matter of law on the negligent misrepresentation, breach of fiduciary duty, and breach of contract claims.

As for the claims against Miller & Wells, Everest sought relief for breach of contract, fraud, and negligent misrepresentation. The court granted judgment on the pleadings for the firm on the breach of contract claim, and granted summary judgment on the other two claims because those claims must fail if Everest's claims against Rambicure failed.

As for the claims against Zurich for bad faith, fraud, conspiracy to commit fraud, and negligent misrepresentation, the court dismissed all of them on the pleadings. Everest appeals.

II.

A.

Did Everest receive sufficient notice before the district court granted summary judgment on a ground—lack of damages—not raised by the winning party? Civil Rule 56(f) permits a court to grant summary judgment "on grounds not raised by a party," but only after affording the losing

party "notice and a reasonable time to respond." After a party receives notice, a reasonable amount of time to respond is presumptively ten days. *Am. Rd. Serv. Co. v. Conrail*, 348 F.3d 565, 567 (6th Cir. 2003). If the proceedings have already put a party on notice of the issue, we do not require a court to give the party an extra ten days to respond after the court identifies the ground. *See Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013).

To determine whether a party had notice, we look at the district court proceedings as a whole. Relevant considerations include whether the prevailing party sought summary judgment, whether the losing party sought summary judgment, and the record before the court. *Id.* Abuse-of-discretion review applies. *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005).

Everest knew it needed to present damages evidence. Rambicure and Rambicure Law were the first parties to move for summary judgment. They sought a decision that Everest lost its malpractice claims as a matter of law for several reasons, though they did not argue the lack-of-damages point. Everest then moved for summary judgment. The motion included a request for damages and supporting documentation.

Even though its opponents did not address the issue in their motions for summary judgment, Everest briefed the topic in its motion. It even cited a case in which the Kentucky Supreme Court rejected a malpractice claim because the plaintiff did not demonstrate that the malpractice caused the harm. *See Osborne v. Keeney*, 399 S.W.3d 1, 10–12 (Ky. 2012). The district court held a hearing on all of the motions together, requiring Everest to be prepared to support its claimed damages at the hearing. Everest thus was not blindsided by the court's decision, and no abuse of discretion occurred when the court declined to give Everest extra time to respond.

Everest worries that summary-judgment proceedings will become "utterly unfocused, limitless and unmanageable, and require non-movants to show every evidentiary card they have (even on non-briefed issues) simply to get their story to a jury." Reply Br. 11. Not so. Our decision simply requires formal notice and an opportunity to respond save when the losing party already knew about the issue. The exception, not the rule, applies here.

### B.

Did the district court correctly assess the damages issue on the merits? No.

Kentucky law, the parties agree, applies to this diversity suit. Legal malpractice claims in the Commonwealth require proof of damages proximately caused by the lawyer's deficient performance. *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). The question is whether Everest supplied enough facts to create a dispute about whether the allegedly deficient conduct by Rambicure caused the alleged financial losses. In trying to meet this burden, it points to three sets of damages arising from Rambicure's actions: (1) the $219,513.89 commission Crestwood collected on the failed sale; (2) the $655,486.11 Everest would have received from the horse's sale (that is, the offered price minus the commission) had it not bid against the prospective buyer; and (3) the $272,486.30 it paid Crestwood in attorney's fees after losing the previous suit. Consider each in turn.

*Commission.* As Everest conceded below, it had to pay the commission to Crestwood regardless of Rambicure's advice on setting a minimum bid. That means Rambicure's advice didn't cause that payment, so it falls out of the damages calculation.

Everest counters that it was harmed because the commission would have come from a different source (the disputed horse's sale, not other horses' sales) had Rambicure not given it bad

advice. But it never backs up the assertion, say by showing that the difference in cash flow caused it other harms. A mere accounting difference, without more, does not show harm.

*Sale price.* Consider next the amount Everest claims it would have received had no one thwarted the disputed horse's sale. As Everest sees it, Rambicure advised Everest that it could set a minimum bid without breaching the contract. It did just that, preventing the horse's sale. That meant that the offered price didn't enter Everest's pocket. But it also meant that, because the sale failed, Everest retained ownership of the horse.

As the district court correctly pointed out, Everest's evidence falls short of showing that this deal harmed it. Yes, it could have been injured if the horse was worth less than the sale price— if say the horse was worth $200,000 and Everest turned down the $875,000 bid. But if the horse was worth $950,000, Everest *benefitted* financially by turning down the $875,000 bid. Absent proof of the horse's value, no reasonable jury could conclude that Rambicure's advice caused Everest to suffer a financial loss.

*Attorney's fees.* Consider last the attorney's fees Everest paid Crestwood after losing the last case. Everest alleges a variety of deficient actions by Rambicure, but does not say Rambicure performed poorly in the last case. It suggests instead that Rambicure's pre-litigation advice about setting a minimum bid and his faulty contract drafting caused it to foot the bill for the attorney's fees in the prior litigation.

The underlying lawsuit's procedural complexities bear on this source of damages. Everest sued Crestwood in Minnesota, alleging problems with Crestwood's management of an Everest stallion. Before long, Crestwood sued Everest in Kentucky. It alleged that Everest breached the contract when it scotched the horse's sale. The Minnesota court transferred Everest's lawsuit to Kentucky, and the Kentucky court consolidated the cases, resolving them together. When Everest

lost, the court applied the contract's fee-shifting provision—a term that required the losing party to pay the winning party for attorney's fees the winning party incurred in enforcing the contract. *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, Nos. 5:09-cv-317-KKC, 5:10-cv-72-KKC, 2013 WL 1332499, at *4 (E.D. Ky. Mar. 29, 2013). The court calculated the fees by determining how much Crestwood reasonably spent on attorney's fees in the whole case, then reduced the amount by twenty percent to approximate the fees incurred in the contract-enforcement claims.

A reasonable jury could conclude that part of the fees stemmed from Rambicure's alleged malpractice. Rambicure gave Everest legal advice. Everest acted in reliance on that advice. It got sued for that action, lost, and had to pay its opponent's attorneys' fees. Some claims related to the contract, it is true, and not to Rambicure's malpractice. That means only that Rambicure's alleged malpractice may not have caused all of the fees Everest paid to Crestwood. It does not mean that Everest paid Crestwood *no* fees stemming from Rambicure's malpractice. And the dispute was not an afterthought in the underlying litigation. The 21-page summary judgment order dedicated four pages to resolving Crestwood's claim against Everest for the action Everest took on Rambicure's advice.

Rambicure contends that Everest must show it lost the previous litigation because of Rambicure's malpractice during that litigation. But Kentucky law gives us no reason to think that only conduct during litigation can cause litigation losses. *See Osborne*, 399 S.W.3d at 10. At least part of the previous litigation consisted of Crestwood's lawsuit against Everest for an action Everest took in reliance on Rambicure's advice. That connection suffices to prevent judgment as a matter of law on the damages issue.

C.

Did the district court impermissibly rely on its own online research outside the record when it resolved the malpractice claims?  No.

The judge, it is true, mentioned during the hearing that he had looked up the post-auction history of the disputed horse.  Courts, it is also true, should decide cases based on the record, not outside research.  The Evidence Rules confine the kinds of facts judges may add to the record based on external sources like online news articles.  Fed. R. Evid. 201.  But any error was harmless. *See Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833, 846 (6th Cir. 2016).  The court's research played no role in its written opinion resolving the case.  The opinion properly relied only on the insufficiencies in the record.

\* \* \*

Because we conclude that one of Everest's claimed sources of harm holds up, we remand the malpractice claims against Rambicure and Rambicure Law for the court's consideration of the cross-motions for summary judgment.  The court also granted summary judgment on the same damages ground on Everest's other claims against them.  We thus vacate on the negligent misrepresentation, breach of fiduciary duty, and breach of contract claims, too.

III.

Everest alleges that Miller & Wells, Rambicure's current employer, engaged in fraud, breach of contract, and negligent misrepresentation.  Miller & Wells sought judgment on the pleadings against Everest on the breach of contract claim.  The district court granted that motion, and granted summary judgment of its own accord on the remaining claims on the same damages ground we just considered.

8

Because we have reached the opposite conclusion on one damages ground, we do not need to discuss the procedural niceties of judgment on the pleadings as opposed to summary judgment. For the purposes of remand, we note only that the text of Civil Rule 12(c), unlike Civil Rule 56, does not authorize rulings on the court's own initiative like the one below. That said, we vacate the entry of judgment on the pleadings and summary judgment on the claims against Miller & Wells, and remand for the district court's further consideration of the motion for judgment on the pleadings.

IV.

Everest also brought four claims (bad faith, fraud, conspiracy to commit fraud, and negligent misrepresentation) against Zurich. The court properly dismissed each of them for failure to state a claim.

*Bad faith.* Everest claims Zurich violated Kentucky law by failing to promptly determine whether its policy covered Everest's claim against Rambicure. A third party may claim bad faith against an insurer when the insurer (1) was "obligated to pay the claim under the terms of the policy," (2) "lack[ed] a reasonable basis in law or fact for denying the claim," and (3) "either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quotation omitted).

Everest agrees that Zurich's policy did not cover claims against Rambicure for conduct before June 1, 2012, and that Rambicure's alleged malpractice occurred before that date. That reality dooms its case. The first prong of Kentucky's test for bad faith requires that coverage exist. Because no coverage exists, the bad-faith claim stumbles out of the starting gate, and the district court properly dismissed it.

In response, Everest tries to persuade us that Kentucky's coverage requirement is unwise because it "provides insurers with a 'get out of jail free card' that excuses insurers from bad-faith conduct, no matter how reprehensible." Appellant Br. 52. But that policy choice is Kentucky's to make, and we are not free to second-guess it.

Everest adds that Kentucky's Unfair Claims Settlement Practices Act, KRS § 304.12-230(14), requires insurers "to promptly provide a reasonable explanation of the basis . . . for denial of a claim." That, Everest says, means bad faith claims can exist when coverage does not. Everest missteps by equating the Act with the bad faith tort. Everest offers us no reason to believe that all violations of the Act give rise to bad faith claims. To the contrary, bad faith exists only when the insurer's conduct was "outrageous, or because of the defendant's reckless indifference to the rights of others." *Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 739 (Ky. 2016). Not every statutory violation gives rise to a bad-faith claim.

*Fraud and conspiracy to commit fraud.* Everest's fraud and conspiracy to commit fraud claims against Zurich fail under the pleading rules. Civil Rule 9(b) requires a pleading to specify the allegedly fraudulent statements, identify the speakers, state where and when the statements were made, and explain why they were fraudulent. *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018). Yet neither claim identifies a specific fraudulent statement.

Everest also has not directed us to any Kentucky authority suggesting that the Commonwealth recognizes claims of conspiracy to commit fraud. Nor has Everest identified the elements of such a claim. Nor could we find any such authority. The court aptly dismissed the claim.

*Negligent misrepresentation.* Negligent misrepresentation requires a false statement. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580, 582 (Ky. 2004).

Everest has not identified a false statement. It alleges that Zurich "supplied [it] with false information regarding the status of [its] malpractice claim." R. 87 at 27. Yet nowhere in this claim or the rest of its complaint does Everest identify such false information. Rather, it discusses a series of exchanges in which Zurich stated that coverage did not exist. Because Everest agrees that coverage did not exist, this claim fails too.

All in all, we affirm the dismissal of the claims against Zurich. We vacate the district court's rulings for Rambicure, Rambicure Law, and Miller & Wells on the claims against them, and remand for further consideration.