RENDERED: MARCH 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1182-MR

PHILLIP P. CRACE, M.D.                                        APPELLANT

v.

APPEAL FROM FLOYD CIRCUIT COURT
HONORABLE EDDY COLEMAN, JUDGE
ACTION NO. 11-CI-00439

JORGE CAMPO AND
PROASSURANCE CASUALTY
COMPANY                                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Dr. Phillip Crace appeals from a decision of the Floyd Circuit Court granting summary judgment to Appellees Jorge Campo and ProAssurance Company on Crace's bad faith claims. We affirm.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

The record in this case is so voluminous that it fills ten large boxes. Such an enormous record is inherently unwieldy, but this case presents a special

challenge because there are multiple boxes containing thousands of pages of unpaginated, unbound materials. The lack of pagination makes it extremely difficult for us to locate specific items in the vast record. We recognize the difficulty of collating such a mammoth record. Nonetheless, we emphasize the requirement of RAP[1] 26(B)(1) to bind and securely arrange the **entire** written record into volumes containing not more than 150 pages each.

In the interests of judicial economy, we shall relate only the truly necessary underlying facts and procedural history. Similarly, we have examined the parties' lengthy briefs but shall discuss only the arguments strictly necessary to resolve the issues before us. Any argument presented in the briefs which is not discussed in this Opinion is redundant, irrelevant, or otherwise without merit.

This bad faith case arose from a malpractice case in which Crace, a physician, was a defendant. Crace's malpractice insurer was ProAssurance, and Campo was the adjuster assigned to that case. The malpractice claim against Crace was settled for $1 million, Crace's policy limits, roughly fourteen months after it was filed. Crace contends he sent a letter to ProAssurance demanding the malpractice claim be settled roughly six months before the settlement actually occurred. However, Crace did not direct the letter to Campo or any other ProAssurance decisionmaker. ProAssurance disputes having received the letter.

---

[1] Kentucky Rules of Appellate Procedure.

Crace filed a first-party bad faith claim against ProAssurance and Campo, arguing, for example, that the settlement was belated, and he was harmed because ProAssurance did not allocate a portion of the settlement to his then-current or former medical practice. The trial court granted summary judgment to ProAssurance and Campo, after which Crace filed this appeal.

## ANALYSIS

### A. Standards of Review

We have succinctly set forth the standards governing summary judgments as follows:

> Summary judgment is proper where there exists no genuine issue of material fact and movant is entitled to judgment as a matter of law. All facts and all inferences drawn from those facts are viewed in a light most favorable to the nonmoving party. Because summary judgment involves only questions of law and the existence of disputed material issues of fact, an appellate court does not defer to a circuit court's decision and reviews the case *de novo.*

*Messer v. Universal Underwriters Insurance Company*, 598 S.W.3d 578, 583-84 (Ky. App. 2019) (citations omitted).

As to bad faith, generally, an insurer "is required to deal with the insured or third-party claimant in good faith." *Belt v. Cincinnati Insurance Company*, 664 S.W.3d 524, 531 (Ky. 2022). Of course, an insurer may "challenge a claim and litigate it if the claim is debatable on the law or facts." *Id.* at 535

(quotation marks and citations omitted). A viable bad faith claim is based not only on delay in resolving an underlying claim; instead, actionable bad faith is premised upon a showing of "intentional misconduct or reckless disregard of the rights of an insured . . . ." *Id.* at 531 (internal quotation marks and citation omitted). In short, "an action for bad faith . . . requires something more than mere negligence. The term itself implies some intentional wrongful conduct . . . . Mere errors in judgment should not be sufficient to establish bad faith." *Blue Cross and Blue Shield of Kentucky, Inc. v. Whitaker*, 687 S.W.2d 557, 559 (Ky. App. 1985).

> A viable bad faith claim must satisfy three elements:
>
> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Belt*, 664 S.W.3d at 532 (citations omitted).

### B. ProAssurance's Business Model Is Irrelevant

We begin our analysis by quickly deeming immaterial Crace's extended argument regarding what he perceives as ProAssurance's general business practice of seeking to maximize profits by delaying resolution of claims made against its insureds. Of course, ProAssurance did ultimately pay Crace's policy limit to resolve the malpractice claim, which undermines his argument.

-4-

Moreover, an insurer generally may "challenge a claim and litigate it if the claim is debatable on the law or facts." *Id.* at 535 (internal quotation marks and citations omitted). Crace's malpractice liability was debatable as he denied wrongdoing in his deposition and experts consulted by ProAssurance agreed. In any event, the question here is whether ProAssurance committed misconduct defending the malpractice claim, not whether its alleged business model is morally optimal. After all, it is beyond reasonable dispute that the goal of most businesses is to maximize profits. In sum, we restrict our analysis to the acts taken by ProAssurance in this case, not its alleged overall business methodology.

### C. Crace Failed to Plead a Breach of Fiduciary Duty Claim

We also reject Crace's argument that the trial court erred by not discussing a breach of fiduciary duty claim. Simply put, there was no such claim to discuss because Crace did not adequately plead one. Neither Crace's initial nor amended intervening complaints uses the term *fiduciary*. Instead, the complaints assert ProAssurance had – and breached – a duty of good faith and fair dealing and generally placed its interests above Crace's. Such language is insufficient.

There was a contractual relationship between Crace and ProAssurance, and "[w]ithin every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties a duty to do everything necessary to carry them out." *Bailey v. Kentucky Lottery Corporation*, 542 S.W.3d

305, 309 (Ky. App. 2018). A fiduciary duty is "more than the generalized business obligation of good faith and fair dealing." *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 242 (Ky. 2013) (citation omitted). Therefore, a breach of fiduciary duty claim cannot properly lie on an allegation that a defendant violated the universal contractual obligations of good faith and fair dealing.

We are a notice pleading jurisdiction but "the simplification and liberality extend[ed] to the manner of stating a case . . . are not so great as to obviate the necessity of stating the elements of a cause of action or defense, as the case may be." *Johnson v. Coleman*, 288 S.W.2d 348, 349 (Ky. 1956). The elements of a breach of fiduciary duty claim are: "(1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of the breach." *Insight Kentucky Partners II, L.P. v. Preferred Automotive Services, Inc.*, 514 S.W.3d 537, 546 (Ky. App. 2016) (internal quotation marks and citation omitted). Crace's complaints do not contain those elements. In plain English, Crace did not plead a facially viable breach of fiduciary duty claim because he failed to allege explicitly or by sufficiently overwhelming implication that ProAssurance owed him a fiduciary duty.

The purpose of a complaint is to "give a defendant fair notice and identify the claim[s]." *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 671 (Ky. 2022). A complaint which does not allege the existence of a fiduciary

relationship between the defendant and plaintiff does not provide a defendant with "fair notice" that the plaintiff is presenting a claim for breach of a fiduciary duty.

Our conclusion is unchanged by our Supreme Court's problematic statement that "a bad faith action is based upon the fiduciary duty owed by an insurance company to its insured based upon the insurance contract." *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 380 (Ky. 2000). Left unanswered by that vague language is whether there is always a fiduciary duty between an insurer and its insured under Kentucky law or whether the existence of that duty is dependent upon the specific terms of the insurance contract.

There appears to be a split among courts across the country about whether there is always a fiduciary relationship between an insurer and its insured. 14 *Couch on Ins.* § 198:7 (3d Ed. 2023). But, generally, according to that esteemed treatise, "a fiduciary relationship is not established by the mere fact of an insurance relationship between the parties, and something more than that is required to create a fiduciary relationship to the insured." *Id.*

We need not determine whether the terms of the contract at issue led to a fiduciary relationship between ProAssurance and Crace because Crace did not adequately plead a claim for breach of a fiduciary duty. A party must plead a cause of action for it to be properly before a court for resolution. Therefore, even if ProAssurance owed Crace a fiduciary duty as a matter of law under *Farmland*

*Mutual Insurance Company*, the trial court was not required to address whether ProAssurance had breached that duty because Crace did not raise a facially viable breach of fiduciary duty claim. In other words, a court need not examine unpled claims, so the trial court did not err by failing to discuss an unpled breach of fiduciary duty claim.

### D. Adjusters Are Not Proper Defendants to Bad Faith Claims

Crace sued both Campo, the adjuster, and ProAssurance for bad faith. Perhaps surprisingly, there appears to be no published Kentucky state court case directly answering whether an adjuster may properly be a bad faith defendant.

Our Supreme Court has held that a bad faith claim may be brought "only to those persons or entities (and their agents) who are engaged . . . in the business of entering into contracts of insurance." *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 102 (Ky. 2000) (internal quotation marks and citation omitted). Of course, ProAssurance is unquestionably "in the business of entering into contracts of insurance." *Id.* at 98. But Crace did not enter into a contract with Campo. Instead, Campo was merely assigned as the adjuster on Crace's claim. We are disinclined to conclude that an adjuster is a proper defendant in a bad faith claim. That position seems to be in alignment with the many federal courts in Kentucky which have considered the issue. *See, e.g., Ring's Crossroads Market Inc. v. Cincinnati Indemnity Company*, No. 1:14-CV-

00105-DJH, 2015 WL 4624252, at \*2-3 (W.D. Ky. Aug. 3, 2015) (unpublished) (collecting cases).

However, the language of *Davidson* is unfortunately imprecise as to who qualifies as the "agent" of an insurer sufficient to be a proper defendant to a bad faith claim. Federal courts in Kentucky have criticized *Davidson* for sending "conflicting signals" and "mudd[ying] the waters regarding claims adjusters' liability for bad faith claims." *Gibson v. American Min. Ins. Co.*, No. CIV A 08-118-ART, 2008 WL 4602747, at \*7 (E.D. Ky. Oct. 16, 2008).

Nonetheless, we agree with our many federal colleagues who have concluded an adjuster cannot be a proper bad faith defendant. Crace entered into a contractual relationship with ProAssurance, not Campo. A bad faith claim "arises out of a *breach of contract* . . . ." *Davidson*, 25 S.W.3d at 100 (emphasis original to *Davidson*). Crace had no contract with Campo personally. It was corporate happenstance, not Crace's specific voluntary act, which resulted in Campo being the adjuster assigned to the malpractice claims against Crace. Because Campo could not have breached a non-existent contract he had with Crace, Campo may not be a proper bad faith defendant.

We welcome and encourage our Supreme Court to clarify the ambiguous language in *Davidson* as to who may properly be a bad faith defendant

-9-

under an agency theory. Until then, however, we agree with United States District Judge Van Tatenhove's cogent analysis:

> While the Kentucky Supreme Court could certainly clarify its position, in light of the obvious ambiguities in this area of the law, this Court does not believe that either the Kentucky Legislature or Kentucky Courts intended to place liability on individual insurance adjusters. As an individual adjuster, Bilinksi is not in the business of entering into contracts of insurance as he is not contractually obligated to pay any claim. Accordingly, the KUCSPA claims against him must be dismissed.

*Couch v. Indiana Insurance Co.*, No. CV 13-82-GFVT, 2014 WL 12648455, at *4 (E.D. Ky. Mar. 13, 2014) (unpublished) (citations omitted). *Accord, e.g.*, *Madison v. Nationwide Mut. Ins. Co.*, No. 1:11-CV-157-R, 2012 WL 692598 (W.D. Ky. Mar. 2, 2012) (unpublished); *Lisk v. Larocque*, No. 3:07-CV-718-S, 2008 WL 2116466 (W.D. Ky. May 19, 2008) (unpublished); *Galloway v. Nationwide Insurance Company of America*, No. CV 09-491-C, 2010 WL 11693620, at *3 (W.D. Ky. Jan. 5, 2010) (unpublished) ("There is no evidence of an agreement between Phinizy and the plaintiff; Nationwide merely selected Phinizy as the adjuster on her case. Phinizy is not an insurer; the plaintiff entered into a contract of insurance with the Nationwide defendants, the parties responsible for paying her claims. There is therefore no 'colorable basis' for a claim against Phinizy. Because he is neither engaged in the insurance business nor contractually obligated to pay the plaintiff's claims, he cannot be held liable under KUCSPA or for tort of

-10-

bad faith.").[2]  We affirm the trial court's decision to grant summary judgment on all bad faith claims against Campo.[3]

### E. Crace Is Not Entitled to Relief on His Claims Regarding the Failure to Allocate the Settlement or the Reporting Thereof

We now turn to Crace's argument that ProAssurance is liable for not allocating the settlement between himself and either his former or then-current medical practice.  Crace also seems to raise a related, not entirely clear, argument that he is entitled to relief regarding ProAssurance filing a mandatory report discussing that settlement with the appropriate medical licensing authorities.

Crace's argument regarding the lack of allocation of the malpractice settlement fails for two main reasons.  First, Crace signed a form authorizing ProAssurance to settle the malpractice claims "in such manner and upon such terms as [ProAssurance] deems expedient . . . ."  Having given ProAssurance carte

---

[2] We recognize that we are not bound by these federal trial court constructions of Kentucky state law.  *E.g.*, *LKS Pizza, Inc. v. Commonwealth ex rel. Rudolph*, 169 S.W.3d 46, 49 (Ky. App. 2005).  Nonetheless, we deem them illustrative and persuasive.

[3] Crace argues that Campo did not argue to the trial court that an adjuster cannot be held liable for bad faith claims.  We decline to sift through the tens of thousands of pages in the circuit court record to determine whether Campo raised that argument.  "It is not the job of the appellate courts to scour the record in support of" a party's arguments, *Dennis v. Fulkerson*, 343 S.W.3d 633, 637 (Ky. App. 2011), and we may decline to address arguments which are not adequately supported by citations to the record.  *Commonwealth v. Roth*, 567 S.W.3d 591, 596 (Ky. 2019).  Regardless, the trial court granted summary judgment for Campo, and we may affirm a trial court's decision on alternate grounds supported by the record and applicable law.  *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.").

-11-

blanche to settle the malpractice claim, Crace forfeited the right to complain later about how the settlement would be structured or allocated. Indeed, it is difficult to conceive how Crace could have more broadly and unreservedly delegated to ProAssurance the unmitigated discretion to settle the malpractice claim within Crace's policy limits in whatever manner it chose.

Second, ProAssurance has shown that it could not have allocated any portion of the settlement to another doctor or medical practice. Crace changed medical practices between performing the surgery which gave rise to the malpractice lawsuit and the filing of that lawsuit. Crace's policy in effect at the time the malpractice action was filed covered his own acts dating back to July 2008, thereby covering the surgery which led to the malpractice claim. But that policy only covered Crace's new practice for acts beginning March 2011 – a date after the surgery which led to the malpractice action. Thus, the settlement could not have been apportioned to Crace's new practice. Indeed, it is illogical to consider allocating fault to an entity which did not even exist when the act which gave rise to the fault occurred. Moreover, when he began his new policy, Crace was deleted from the policy covering his former practice. Thus, no portion of the settlement could properly have been allocated to his former practice.

Crace contends on pages ten and twenty of his brief that he remained covered under his former practice's malpractice policy. However, he cites to

Appendices 22 and 52 of his brief to support that proposition, which leads to two separate fatal problems. First, RAP 32(A)(3) and (4) require a party to cite to "the specific location in the record" to support its factual recitations and arguments. Although this record is unusual in that much of it is unpaginated, Crace failed to even attempt to cite to where in the vast record we may locate either Appendix.

Second, Appendix 22 to Crace's brief is the informed consent form signed by the malpractice patient prior to surgery and so it is irrelevant to this argument. Appendix 52 is a motion *in limine* filed by Crace. But a motion is a party's counsel's argument to a court, not evidence (in contrast to, for example, a deposition). "[A]n attorney's arguments do not constitute evidence." *Dixon v. Commonwealth*, 263 S.W.3d 583, 593 (Ky. 2008). In short, citing to a motion does not provide us with clear evidentiary support for Crace's argument.

An attorney must draft and then scrupulously proofread a brief to ensure it contains correct, ample citations to the record. A failure to do so is always improper, but the impact of not doing so is magnified when the trial court record is staggeringly huge. Simply put, we lack the time, resources and obligation to scour a sprawling record to try to find documents to support a party's assertions. "It is not the job of the appellate courts to scour the record in support of an appellant['s] . . . argument." *Dennis*, 343 S.W.3d at 637. We decline to address further Crace's argument that he remained a named insured on the policy of his

-13-

former practice during the relevant time periods because he has not adequately supported that argument with proper citations to *evidence* in the record. *Roth*, 567 S.W.3d at 596.

Meanwhile, ProAssurance cites to an endorsement showing that Crace was deleted from the policy of his former practice prior to the filing of the malpractice complaint. Thus, based on the parties' briefs, there is no genuine issue of material fact as to whether Crace was covered on his former practice's policy during the relevant time period. But, even if there were, the fact that Crace signed a release which gave ProAssurance carte blanche to settle the case as it saw fit would defeat his claim that ProAssurance was somehow required to allocate a portion of the malpractice settlement to Crace's former practice. Having given ProAssurance completely unlimited discretion to settle, Crace's arguments that ProAssurance somehow abused its unlimited discretion ring hollow.

The exact contours of Crace's argument that he is entitled to relief due to the mandatory report(s) ProAssurance submitted to licensing authorities detailing the malpractice settlement is not readily apparent from his briefs. 42 U.S.C.[4] §11131(a) generally requires an insurance company which makes a payment in response to a malpractice claim to report the payment to the Secretary

---

[4] United States Code.

-14-

of Health and Human Services.  The report must also be sent to the state licensing board for the state in which the malpractice claim arose.  42 U.S.C. §11134(c)(1).

"[U]pon request," the Secretary of Health and Human Services may also provide the reported malpractice payment information to "hospitals, and to other health care entities . . . that have entered (or may be entering) into an employment or affiliation relationship with the physician . . .  or to which the physician . . . has applied for clinical privileges . . . ." 42 U.S.C. §11137(a).  We have explained that one of the foremost purposes of these reporting requirements is "to prevent incompetent physicians from relocating without disclosure of their previous records." *Omar v. Jewish Hosp. Healthcare Services, Inc.*, 153 S.W.3d 845, 847 (Ky. App. 2004).

There is no dispute that ProAssurance was required to report the malpractice settlement.  There also is no dispute that the reports it submitted were factually accurate.  So, it is not entirely clear why Crace argues he is entitled to any relief regarding ProAssurance's submission of those reports.

42 U.S.C. §11137(c) provides in relevant part that "[n]o person or entity . . . shall be held liable in any civil action with respect to any report made under this subchapter . . . without knowledge of the falsity of the information contained in the report."  Submitting an incorrect report is not sufficient to overcome the immunity granted by 42 U.S.C. §11137(c); instead, a reporting entity

is not entitled to immunity only if they knowingly submitted a false report. *E.g.*, *Murphy v. Goss*, 103 F. Supp. 3d 1234, 1239-40 (D. Or. 2015) (defendants entitled to summary judgment despite admittedly submitting an inaccurate report because plaintiff had not presented evidence "suggesting that any Defendant knew that the . . . report was false"). Crace has not shown that ProAssurance submitted an incorrect report, much less that it knowingly did so.

As ProAssurance notes, federal courts have held that the immunity afforded by §11137(c) "extends to civil actions brought under state tort law, where the damages claimed are solely the result of a report to the [data bank]." *Lee v. Hospital Authority of Colquitt Cnty.*, 353 F. Supp. 2d 1255, 1265 (M.D. Ga. 2004), *aff'd* 397 F.3d 1327 (11th Cir. 2005). *Accord, e.g.*, *Robinson v. East Carolina University*, 329 F. Supp. 3d 156, 175 (E.D. N.C. 2018) ("This protection from liability, by the breadth of its terms, extends to injunctive relief and civil actions brought under state law, where the damages claimed are solely the result of a report to the [data bank]."). Thus, any state law claims made by Crace regarding the filing of those reports are preempted. Moreover, Crace has not convinced us that our colleagues on the Fourth District Court of Appeal of Florida were incorrect when they held that a grant of immunity defeated a claim that a reporting entity improperly allocated the amount of a malpractice settlement. *Babic v. Physicians Protective Tr. Fund*, 738 So. 2d 442, 446 (Fla. Dist. Ct. App. 1999).

In sum, we accept Crace's contention that allocating the entire settlement to him could have negatively impacted his future employment possibilities and malpractice premiums. We also accept that there is a general presumption against concluding that a federal law preempts state law. Nonetheless, we affirm the trial court's decision to grant summary judgment on all Crace's claims regarding failure to allocate the settlement and the mandatory reporting thereof.

### F. Crace Has Not Shown Actionable Bad Faith

Although ProAssurance seems to dispute it, we shall assume in the interests of judicial economy that Crace satisfied the first element of bad faith – showing the insurer was obligated to pay under the insured's policy. After all, Crace unquestionably had a malpractice policy with ProAssurance and ProAssurance paid the policy limits to settle the malpractice claim against Crace. "To be clear, an *obligation to pay* requires proof that the insured's policy requires the insurer to pay, not that there is liability under the contract . . . ." *Mosley v. Arch Specialty Insurance Company*, 626 S.W.3d 579, 585 (Ky. 2021).

But Crace's bad faith claims fail on the second and third elements. The second element requires Crace to show that ProAssurance lacked a reasonable basis in fact or law for denying the claim. *Belt*, 664 S.W.3d at 532. An insurer must "make a good-faith effort in effectuating prompt, fair and equitable

-17-

settlements of claims in which [its insured's] liability has become reasonably clear[.] This Court has interpreted reasonably clear to mean beyond dispute[.] But when an insured's liability is unclear, bad-faith claims fail as a matter of law . . . ." *Mosley*, 626 S.W.3d at 586 (internal quotation marks, footnotes and citations omitted).

The gargantuan record shows that Crace denied wrongdoing regarding the surgery which gave rise to the claim. Crace simply answered "[n]o" when asked in his September 2013 deposition whether he had "breached the standard of care" and gave the same definitive, defiant answer when asked if he "made a mistake that caused [the medical malpractice claimant] harm . . . ." Crace Dep. p. 72 (Appendix C. to ProAssurance's Brief). And ProAssurance points to expert witnesses it consulted who agreed with Crace's conclusions. Thus, ProAssurance had reasonable factual and legal grounds to support its litigation position that Crace had not committed malpractice, despite ProAssurance personnel allegedly having stated that their experience with malpractice cases in Floyd County meant it would be extremely difficult, if not impossible, to persuade a jury to return a verdict in Crace's favor. Because Crace cannot satisfy the second element, the trial court properly granted summary judgment to ProAssurance. *Hollaway v. Direct General Insurance Company of Mississippi, Inc.*, 497 S.W.3d 733, 738 (Ky. 2016)

(holding that a defendant is entitled to summary judgment if a plaintiff does not present proof sufficient to satisfy all three elements of a viable bad faith claim).

In addition, Crace has not satisfied the third bad faith element because he has not shown that ProAssurance's conduct "was outrageous and caused [Crace] actual damage. The alleged conduct must go beyond negligence and justify the imposition of punitive damages." *Mosley*, 626 S.W.3d at 588.

Crace faults ProAssurance for not settling the case sooner. Indeed, Crace highlights the disputed letter he purports to have sent ProAssurance demanding they settle the malpractice case several months before the case actually settled. Even if we assume for summary judgment purposes that Crace sent the letter and ProAssurance received it soon thereafter, a "mere delay in settlement does not rise to bad-faith conduct." *Id.* at 588-89. Though whether Crace sent the letter and ProAssurance received it is a matter of dispute, that dispute was not so material as to make summary judgment improper as – even construing the dispute in the light most favorable to him – Crace has not made a sufficient showing that ProAssurance acted outrageously in not settling the case sooner. *Absher v. Illinois Cent. R. Co.*, 371 S.W.2d 950, 953 (Ky. 1963) (affirming summary judgment despite the presence of a factual dispute "because whichever way it might be resolved, for the reasons hereinafter set forth the judgment must be the same. Hence summary judgment was appropriate"); *Kearney v. University of Kentucky*,

638 S.W.3d 385, 397 (Ky. 2022) ("Determination that a fact is material or immaterial rests on the substantive law's identification of which facts are critical and which facts are irrelevant.").

The malpractice case settled roughly fourteen months after it was filed, which is not a manifestly excessive length of time – *i.e.*, it is not facially outrageous. Crace cites no case where bad faith claims were deemed proper under a similar timeline. Nor is it outrageous on its face for ProAssurance to have not settled the case for several months after its insured requested that it do so. An insurer's litigation position regarding settlement is permitted to "evolve . . . as the investigation unfolds . . . ." *Hollaway*, 497 S.W.3d at 738. Here, even Crace himself changed positions as to whether settlement was proper, as his stance evolved from vehemently denying wrongdoing and resisting settlement to asking ProAssurance to settle the case. There is nothing inherently nefarious or improper stemming from ProAssurance's resistance to settlement until agreeing to do so at mediation, given the evidence in its favor (including Crace's own adamant testimony that he did not commit malpractice). Moreover, the case settled soon after Crace signed a form authorizing ProAssurance to do so.

We reject Crace's supposition in his opening brief that a jury could conclude that ProAssurance delayed settling the malpractice claim "to extract a more favorable settlement." Crace cites to nothing specific in the record to support

-20-

that conjecture. And though it was possible a jury would return a verdict in excess of Crace's policy limits, ProAssurance agreed to settle the case for $1 million, which was Crace's policy limit. How then could a reasonable juror conclude ProAssurance improperly delayed resolution of the malpractice claim simply to benefit itself when it settled the case for the maximum amount for which it was liable under Crace's policy? Conjecture and speculation are insufficient to defeat summary judgment. *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 201 (Ky. 2010).

Moreover, Crace has not shown how any delay in settlement caused him to suffer specific, particularized damages. As ProAssurance notes in its brief, Crace has not sufficiently "articulated how he would be better off if the case against him had settled earlier." For example, settling the case for Crace's policy limits immediately after he sent the letter requesting the case be settled would have triggered the same reporting requirements. We again stress that mere settlement delay alone is insufficient to show bad faith.

Crace bemoans the fact that he and his attorneys in the malpractice action were held in contempt because they failed to turn over in discovery a peer review from Humana which largely exonerated Crace but was damning to a doctor who supervised the malpractice plaintiff's postoperative care. However, our Supreme Court has limited the admissibility of litigation conduct by an insurer to

-21-

behavior regarding settlement. *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 522-23 (Ky. 2006). *See also Hamilton Mut. Ins. Co. of Cincinnati v. Buttery*, 220 S.W.3d 287, 295 (Ky. App. 2007) ("Consequently, evidence of an insurer's general litigation tactics (distinguished from evidence of its settlement behavior during the course of litigation) is generally not admissible on the issue of bad faith."). Other alleged misconduct is inadmissible in bad faith litigation as that non-settlement misconduct may be remedied by reliance upon the Rules of Civil Procedure which govern all civil litigation. *Mosley*, 626 S.W3d at 591. Failing to provide the peer review in discovery is not directly related to an insurer's settlement behavior.

Regardless, Crace has not shown that ProAssurance was responsible for the discovery violation. We disagree with Crace's argument in his reply brief that it was ProAssurance's responsibility to ensure that Crace's counsel produced the report in discovery. Though counsel may seek the input of his or her client's insurer, a party's counsel, not a party's insurer, is responsible for complying properly and fully with discovery requests. *See, e.g.*, SCR[5] 3.130(3.4)(d) (preventing an attorney from "deliberately fail[ing] to make [a] reasonably diligent effort to comply with a legally proper discovery request by an opposing party"). Therefore, even if we were to agree with Crace that the document should have been provided to the malpractice plaintiff earlier, we would disagree that the

---

[5] Rules of the Supreme Court.

failure to do so somehow supports a viable bad faith claim against ProAssurance. Crace would have to seek any relief stemming from the imposition of the contempt sanction from his counsel, not his malpractice insurer.

In sum, even construing the facts in the light most favorable to Crace, he has not shown that ProAssurance's conduct was actionably "outrageous . . . ." *Hollaway*, 497 S.W.3d at 739. Thus, we affirm the trial court's decision to grant summary judgment to ProAssurance.

## CONCLUSION

For the foregoing reasons, the Floyd Circuit Court is affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE JORGE CAMPO: |
|---|---|
| Barry Coburn | |
| Washington, D.C. | Charles D. Aaron, Jr. |
| | Benny C. Epling, II |
| Masten Childers, III | Lexington, Kentucky |
| Lesley A. Cayton | |
| Gordon J. Dill, Jr. | BRIEF FOR APPELLEE |
| Todd P. Greer | PROASSURANCE CASUALTY |
| Lexington, Kentucky | COMPANY: |
| | |
| C. Allen Foster | Griffin Terry Sumner |
| Washington, D.C. | Christopher G. Johnson |
| | Laura M. Haara |
| | Louisville, Kentucky |
| | |
| | Daniel G. Brown |
| | Louisville, Kentucky |