HAMILTON MUTUAL INSURANCE
COMPANY OF CINCINNATI,
Appellant/Cross–Appellee,

v.

Terry G. BUTTERY, Appellee/Cross–Appellant.

Nos. 2005–CA–000233–MR,
2005–CA–000426–MR.

Court of Appeals of Kentucky.

Jan. 26, 2007.

Rehearing Denied April 10, 2007.

Bryan E. Bennett, David A. Nunery, Campbellsville, KY, for appellant/cross-appellee.

M. Austin Mehr, Timothy E. Geertz, Lexington, KY, D. Randall Jewell, Barbourville, KY, for appellee/cross-appellant.

Before COMBS, Chief Judge; HUDDLESTON and KNOPF, Senior Judges.[1]

1. Senior Judges Joseph R. Huddleston and William L. Knopf sitting as Special Judges by assignment of the Chief Justice pursuant to

## OPINION

COMBS, Chief Judge.

Hamilton Mutual Insurance Company of Cincinnati appeals a judgment of the Knox Circuit Court following a jury verdict in favor of its insured, Terry G. Buttery. Buttery filed a complaint alleging bad faith on the part of Hamilton Mutual for its failure to act in timely fashion to settle his claim for the burglary and vandalism of his home. After a careful review of the record, we affirm the jury's verdict and the trial court's judgment in every respect. Buttery's protective cross-appeal is dismissed as moot.

Terry Buttery's home was burglarized and vandalized in the daylight hours of the morning of February 17, 1998. Buttery immediately notified the police. Upon the advice of the responding police officer, he contacted his insurance company, Hamilton Mutual.

Hamilton Mutual assigned John Dotson, an independent adjuster, to handle the claim. After examining the scene, the adjuster explained to Buttery that the company would pay him within 10 days and that he would receive an advance for living expenses. Buttery was asked to complete and submit claim forms. Although his homeowner's policy provided for the more generous *replacement value* of the items taken or destroyed, Hamilton Mutual instead provided Buttery with claim forms to recover the *actual cash value* of the lost items **without advising Buttery** that his policy covered replacement value for losses. Buttery completed and submitted the proof of loss forms within twenty-four hours.

Payment on the claim did not follow as promised. In seeking compensation for the loss, Buttery ultimately submitted a vast amount of paper work and documentation, including: three proof of loss statements; all the receipts that he had for the stolen or destroyed items; written estimates that he had obtained for the cost of repairs to his home; and his tax returns for the previous five years. Buttery also appeared for four examinations under oath conducted by Hamilton Mutual. When he sought to present his accountant for interrogation, Hamilton declined an interview. Buttery claimed that he had sustained a loss of nearly $58,000.00.

Nearly a year after the loss, Hamilton Mutual had not yet satisfied any part of the claim. Buttery filed suit. Following a jury trial, judgment was entered in favor of Buttery in the amount of $57,375.47. Hamilton Mutual filed motions for a new trial and for judgment notwithstanding the verdict; both were denied by the trial court. Hamilton appealed.

In an opinion rendered on June 8, 2001, a panel of this court unanimously affirmed the judgment. Hamilton Mutual then filed a motion for discretionary review in the Supreme Court, which was denied on June 5, 2002. Nonetheless, Hamilton still refused to comply with the judgment. Buttery had to file a motion in the trial court for forfeiture of Hamilton's supersedeas bond. At long last, after more than four years, Buttery received payment for his claim. By that point, Buttery had incurred more than $28,000.00 in fees and expenses.

In June 2001, Buttery filed this bad faith action against Hamilton Mutual. A jury trial was conducted in October 2004. After considering the evidence presented to explain Hamilton Mutual's delay in paying the claim made under the homeowner's policy, the jury returned its verdict in favor of Buttery. The jury found that

Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Hamilton Mutual lacked a reasonable basis to refuse payment of Buttery's claim and that it either knew that it lacked such a basis to refuse payment or that it acted with reckless disregard as to whether such a basis existed to justify its refusal to pay. The jury also found that Hamilton Mutual had violated nine separate provisions of Kentucky's Unfair Claims Settlement Practices Act, Kentucky Revised Statutes (KRS) 304.12–230 ("UCSPA"). Buttery was awarded $251,003.05, including punitive damages; $12,737.17 in prejudgment interest; and an additional $27,102.64 in attorney's fees.

On November 1, 2004, Hamilton Mutual filed a motion for judgment notwithstanding the verdict and a motion to alter, amend, or vacate the judgment. Buttery responded to the motions with extensive written memoranda. By an order entered on January 4, 2005, the trial court denied both motions. These appeals followed.

*The Motion to Alter, Amend, or Vacate*

■ Hamilton Mutual argues first that the trial court erred by failing to grant its motion to alter, amend, or vacate. It contends that Buttery was not entitled to an award of attorneys' fees and prejudgment interest in this case since there was no finding that it had violated the provisions of KRS 304.12–235. We disagree.

KRS 304.12–235 provides as follows:

(1) All claims arising under the terms of any contract of insurance shall be paid to the named insured person ... not more than thirty (30) days from the date upon which notice and proof of claim, in the substance and form required by the terms of the policy, are furnished the insurer.

(2) If an insurer fails to make a good faith attempt to settle a claim within the time prescribed in subsection (1) of this section, the value of the final settlement shall bear interest at the rate of twelve percent (12%) per annum from and after the expiration of the thirty (30) day period.

(3) If an insurer fails to settle a claim within the time prescribed in subsection (1) of this section and the delay was without reasonable foundation, the insured person ... shall be entitled to be reimbursed for his reasonable attorney's fees incurred....

Our examination of the verdict reveals that the jury found that Hamilton Mutual failed to make a timely, good faith attempt to satisfy Buttery's claim and that the delay was without reasonable foundation. Thus, the requirements of KRS 304.12–235 were met. The jury found specifically that Hamilton Mutual lacked a reasonable basis to refuse payment of Buttery's claim; that it refused to pay Buttery's claim without conducting a reasonable investigation; that it failed either to affirm or to deny coverage within a reasonable time after an adequate proof of loss statement had been completed; that it did not attempt in good faith to effectuate a prompt, fair, and equitable settlement of Buttery's claim; that it compelled Buttery to bring a legal action to recover amounts due under the insurance policy by offering him substantially less than the amounts ultimately recovered following the first trial; that it delayed the investigation or payment of claims by requiring Buttery to submit multiple forms containing substantially the same, repetitive information; and that it engaged in unfair or deceptive practices.

■ Kentucky's UCSPA is aimed at preventing various kinds of wrongful conduct. Hamilton Mutual's outrageous behavior in this case violated both sections (2) and (3) of KRS 304.12–235. *See FB Ins. Co. v. Jones,* 864 S.W.2d 926 (Ky.App. 1993). The court's award of attorneys'

fees and interest under KRS 304.12–235 was wholly warranted based on the jury's factual findings, and Hamilton Mutual was not denied due process of law. The trial court did not err by denying Hamilton's motion to alter, amend, or vacate the judgment awarding attorneys' fees and interest.

### The Motion for JNOV

■ Hamilton Mutual next argues that the trial court erred by denying its motion for judgment notwithstanding the verdict. It contends that Buttery failed to produce clear and convincing evidence that Hamilton Mutual violated the provisions of Kentucky's UCSPA. Hamilton Mutual claims that it presented conclusive evidence to indicate that Buttery's claim was "fairly debatable" and that, therefore, its actions did not violate the provisions of KRS 304.12–230. We disagree.

■ Kentucky's UCSPA "imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured...." *Knotts v. Zurich Ins. Co.,* 197 S.W.3d 512, 515 (Ky. 2006). The provisions were enacted "to protect the public from unfair trade practices and fraud." *State Farm Mut. Auto. Ins. Co. v. Reeder,* 763 S.W.2d 116, 118 (1988). The statute "should be liberally construed so as to effectuate its purpose." *Id.*

The Act defines and imposes a comprehensive, detailed list of duties upon an insurer as follows:

It is an unfair claims settlement practice for any person to commit or perform any of the following acts or omissions:

(1) Misrepresenting pertinent facts or insurance policy provision relating to coverages at issue;

(2) Failing to acknowledge and act reasonably promptly upon communica-

tions with respect to claims arising under insurance policies;

(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(5) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

(8) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(9) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

(10) Making claims payments to insureds or beneficiaries not accompanied by statement setting forth the coverage under which the payments are being made;

(11) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settle-

ments or compromises less than the amount awarded in arbitration;

(12) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(13) Failing to promptly settle claims, where liability has become reasonably clear, under one (1) portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(14) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

(15) Failing to comply with the decision of an independent review entity to provide coverage for a covered person as a result of an external review in accordance with KRS 304.17A–621, 304.17A–623, and 304.17A–625.

KRS 304.12–230.

■ A cause of action for a violation of the UCSPA may be maintained only where there is proof of bad faith of an outrageous nature. It must be sufficient for a jury to conclude that the insurer's intentional misconduct emanated from an evil motive or a reckless indifference to the rights of others. *Wittmer v. State Farm Mut. Auto. Ins. Co.,* 864 S.W.2d 885 (Ky. 1993). And "[a]lthough matters regarding investigation and payment of a claim may be 'fairly debatable,' an insurer is not thereby relieved from its duty to comply with the mandates of the [Act]." *Farmland*

*Mut. Ins. Co. v. Johnson,* 36 S.W.3d 368, 375 (Ky.2000). "An insurance company still is obligated under the [Act] to investigate, negotiate, and attempt to settle the claim in a fair and reasonable manner." *Id.* Moreover, "whether a claim or the amount of a claim is fairly debatable is a question of fact for the jury." *Id.* at 376.

The jury in this case was presented with a catalogue of incidents of Hamilton Mutual's alleged bad faith. Buttery presented proof indicating that Hamilton Mutual's entire investigation was focused on finding a way to evade satisfying his claim; that the company monitored his financial struggles closely so as to leverage its bargaining position; and that Hamilton Mutual intended to refuse to satisfy the claim until Buttery released the company from liability arising from its misconduct. For more than four years, Buttery fought his insurer to obtain the coverage for which he had contracted and paid. This evidence was more than sufficient for the jury to conclude that Hamilton Mutual had engaged in intentional misconduct driven by an improper motive or a reckless indifference to Buttery's rights as its insured. *See Wittmer v. State Farm Mut. Auto. Ins. Co., supra.* The court did not err by submitting the case to the jury nor by denying Hamilton Mutual's motion for judgment notwithstanding the verdict.

In a related argument, Hamilton Mutual contends that the trial court also erred by denying its motion for a judgment notwithstanding the verdict since Buttery's claims were barred by the advice-of-counsel defense. We disagree.

■ Hamilton Mutual argues that it relied upon the advice of its counsel in refusing to pay Buttery's claim. Accordingly, it seeks to justify its alleged misconduct and to circumvent UCSPA consequences by shifting responsibility to its attorney.

Claiming that it relied entirely upon the attorney's advice, Hamilton Mutual therefore contends that Buttery could not possibly have shown that it acted with an evil motive or a reckless disregard for his rights.

Kentucky courts have never held that advice of counsel provided an absolute defense against allegations of an insurer's bad faith. We shall not disregard or eviscerate the statutory policy set forth in UCSPA. We cannot conclude that an insurer may delegate its duty of good faith and fair dealing to anyone else—even its counsel. While an insurer most assuredly may seek the advice of counsel, it remains ultimately responsible for its own non-delegable statutory duty to properly investigate claims and adjust them in harmony with the terms and conditions of its policy. An insurer cannot engage in the subterfuge of avoiding its duties by the shield of retaining an attorney. Reliance on the advice of counsel must be reasonable, and the insurer retains its obligation to exercise its own independent judgment in assessing an insured's rights under a policy. The court did not err by submitting the case to the jury nor by denying Hamilton Mutual's motion for judgment notwithstanding the verdict on the issue of reliance on advice of counsel.

Hamilton Mutual next contends that the trial court erred by failing to dismiss claims concerning its conduct after Buttery filed suit in 1999 to enforce coverage. Since Kentucky's UCSPA does not extend to conduct occurring after the filing of a lawsuit, Buttery counter-argues that the insurer's duty of good faith and fair dealing applies during the settlement negotiations and continues throughout the litigation of the claim in the event that settlement not be achieved. Hamilton Mutual argues that such evidence was irrelevant to Buttery's bad faith action.

The Supreme Court of Kentucky has recently addressed this very issue. In the 2006 case of *Knotts v. Zurich Ins. Co.*, *supra*, 197 S.W.3d 512, the Court held that evidence of an insurer's settlement behavior *throughout* the litigation may be examined and presented in order to establish an insurer's bad faith. The Court held that the provisions of Kentucky's UCSPA cannot be read so narrowly or restrictively as to relieve insurers from their obligation to deal fairly with insureds—**even after litigation** has been instituted against them.

In *Knotts*, the Court directly rejected the argument proposed by Hamilton Mutual in this case: namely, that the word *claim* in the statute means a *pre-litigation*, adjustable demand made against the insurance policy. The Supreme Court reached the very oppositive conclusion, holding that both settlement discussions **and** litigation are equally viable means of addressing a claim and that both are amenable to UCSPA. They are alternate means of relief, and they are not mutually exclusive.

> "[C]laim" as used in the statute, means an assertion of a right to remuneration under an insurance policy once liability has reasonably been established. This is usually done by making the claim directly to the insurance company, which then engages in the claim adjustment process. But it may also be accomplished by instituting litigation, which is simply another means of asserting the right under the insurance policy. Though litigation is distinct from the claims adjustment process in that it specifically invokes the courts' power to decide the issue of liability, both procedures are simply methods of pursing claims under an insurance policy.

*Knotts* at 516.

The Court emphasized that this construction is wholly consistent with the public policy underlying the statute in order to

prevent a company's unfair use of litigation as yet another device for dodging its responsibility:

If KRS 304.12–230 were not applicable once litigation commenced, insurance companies would have the **perverse incentive to spur injured parties toward litigation,** whereupon the insurance company would be shielded from any claim of bad faith. Such a reading would undermine the statute's fundamental purpose by allowing insurance companies to engage in whatever sort of practice—fair or unfair—they see fit to employ. The remedial nature of the statute requires that we attempt to effectuate its purpose, which, in a situation like this one, requires applying the statute to conduct occurring after the commencement of litigation of a tort action. (Emphasis added.)

*Knotts* at 517.

As Buttery has correctly observed, an insurer's duty to deal fairly with its insured does not end if or when an insured seeks recourse to litigation. Consequently, we conclude that the trial court did not err by denying Hamilton Mutual's motion for summary judgment as to claims arising from its actions and omissions following the filing of the complaint.

 Finally, Hamilton Mutual challenges the nature of the evidence that the trial court allowed Buttery to introduce. It contends that much of the evidence dealing with the post-complaint issues pertained to how Hamilton Mutual practiced its case in court (*i.e.,* its trial tactics and strategies) as distinguished from *settlement behavior.*

 In *Knotts,* the Court allowed evidence of an insurer's settlement behavior **during litigation** to be used to demonstrate bad faith. However, it clearly distinguished that settlement conduct from an insurer's litigation tactics in general, holding that:

[w]e are confident that the remedies provided by the Rules of Civil Procedure for any wrongdoing that may occur within the context of the litigation itself render unnecessary the introduction of evidence of litigation conduct.

*Id.* at 522. Consequently, evidence of an insurer's general litigation tactics (distinguished from evidence of its settlement behavior during the course of litigation) is generally not admissible on the issue of bad faith.

In *Knotts,* litigation against the insurer was resolved by means of summary judgment. Therefore, the Kentucky Supreme Court did not address any evidence presented to the jury by the insured. In this case, after having reviewed the record, we are not persuaded that the introduction of the challenged evidence requires reversal of the judgment. Hamilton Mutual aggressively defended its actions based upon the "advice-of-counsel" defense. Throughout the bad faith action, it argued that its delay in ultimately satisfying Buttery's claim resulted from **litigation decisions** that it had made during the trial of the underlying action. Hamilton Mutual claimed that it had a reasonable basis to deny Buttery's claim because it had consistently acted on the advice of counsel. Because Hamilton Mutual effectively "opened the door" by presenting evidence of its litigation conduct, we hold that Buttery was entitled to comment on the evidence in rebuttal. *Harris v. Thompson,* 497 S.W.2d 422, 430 (Ky.1973). The admission of the challenged evidence does not constitute reversible error.

We affirm the judgment of the Knox Circuit Court.

ALL CONCUR.