RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-0586-DG

CRYSTAL LEE MOSLEY, INDIVIDUALLY        APPELLANTS
AND AS ADMINISTRATRIX OF THE ESTATE
OF RHETT LEE MOSLEY, DECEASED AND
RHETT MOSLEY, JR., A MINOR, BY AND
THROUGH HIS MOTHER AND NEXT
FRIEND, CRYSTAL LEE MOSLEY


                        ON REVIEW FROM COURT OF APPEALS
V.                           NO. 2017-CA-1252
             HARLAN CIRCUIT COURT NO. 2011-CI-00349


ARCH SPECIALTY INSURANCE COMPANY        APPELLEES
AND NATIONAL UNION FIRE INSURANCE
COMPANY


**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>AFFIRMING</u>**

We accepted discretionary review in this third-party bad-faith case to determine whether Arch Specialty Insurance Company and National Union Fire Insurance Company acted in bad faith while mediating negligence and wrongful death claims asserted by Crystal Lee Mosley against insureds of Arch and National Union after her husband's death in a coal mining accident. The trial court summarily dismissed bad-faith claims against both companies, and the Court of Appeals affirmed. We likewise affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

While working the night shift at a surface mine, Rhett Mosley was killed when the lube truck he was operating crashed and overturned, crushing him underneath the truck. After the accident, a Mine Safety and Health Administration (MHSA) investigation revealed the lube truck's brakes were improperly maintained and malfunctioned at the time of the accident. MSHA also noted Rhett was not wearing a seatbelt. MSHA ultimately concluded that these two circumstances—along with mine management's failure to conduct preoperational equipment checks—were the root causes of Rhett's fatal accident.

Crystal Lee Mosley, in her individual and representative capacities, brought a negligence and wrongful-death action against four companies involved in the mining operation: (1) Rex Coal Company, owner of the mine; (2) Jean Coal Company, operator of the mine; (3) Regional Contracting, Rhett's employer, an employee-leasing company that provided employees to Jean Coal; and (4) Dixie Fuels, owner of the lube truck. Mosley also sued Terry Loving, the owner and sole managing member of Regional Contracting and Dixie Fuels.[1] Loving, Jean Coal, and Regional Contracting were insured by Arch. Rex Coal and Dixie Fuels were insured by National Union. Rex Coal and Dixie Fuels were indemnitees under the Arch policy insuring Jean Coal, Regional Contracting, and Loving.

---

[1] Loving and his family members own all the entities involved in this mining operation. Rex Coal and Jean Coal are both owned by Karen Loving, Terry Loving's wife; Joe Bennett, Karen Loving's brother; and several other relatives.

2

During the several years following the filing of Mosley's complaint, the parties undertook discovery, disputed liability, and filed summary judgment motions. The litigation was complex and slow moving. Regional Contracting, Rhett's employer, argued that all claims against it were barred by the exclusivity provisions of Kentucky's Workers' Compensation Act. Jean Coal, the company that contracted with Regional Contracting for employees, asserted it was entitled to up-the-ladder immunity under the Workers' Compensation Act. Dixie Fuels, owner of the lube truck, argued Mosley's claims against it were misplaced under the law of bailments because Jean Coal had possession and control of the lube truck at the time of the accident, relieving it of any obligation to maintain the truck. And Rex Coal argued it was not involved in the mining operation at the time of the accident, so it owed no duty to Rhett. All defendants asserted that they were entitled to an apportionment instruction based on Rhett's own negligence in failing to wear an available seat belt.

The trial court dismissed Mosley's claims against Regional Contracting, finding its payment of workers' compensation benefits on Rhett's behalf barred suit against it. The remaining parties were ordered to attempt mediation and mediated on two separate occasions.

At the first mediation, Arch offered its $1 million policy limits to settle all claims against its insureds. Mosley refused to accept less than National Union's $6 million policy limits as well, which National Union was unwilling to contribute because of its insureds' available defenses. The first attempt at mediation failed.

3

At the second mediation, an attorney representing all defendants and an adjuster for National Union attended. Arch did not send an adjuster to negotiate but again offered its full $1 million policy limits toward a global settlement. Mosley demanded $1 million from Arch to settle the claims against Jean Coal, but not the claims against Loving. Arch refused to settle, insisting that it had an obligation to both of its insureds and could not exhaust its policy limits to protect only one of its insureds, leaving the other exposed. Mosley continued to demand National Union's $6 million policy limits. So the second mediation failed. But shortly after that, Mosley reached a settlement with Arch, accepting the full $1 million policy limits to settle all claims against its insureds, Jean Coal and Loving. Later, National Union settled its claims on behalf of Rex Coal and Dixie Fuel for $2 million.

Following the second failed mediation, Mosley filed third-party bad-faith claims against Arch and National Union. Mosley claimed that Arch and National Union acted in violation of the Kentucky Unfair Claims Settlement Practice Act (KUCSPA)[2] and engaged in a civil conspiracy during the mediations of the wrongful-death action. Arch and National Union contested these claims and filed motions to dismiss. The trial court denied the motions, allowing the bad-faith claims to proceed, however, discovery for the bad-faith action was stayed until the underlying wrongful-death action was fully resolved.

---

[2] Kentucky Revised Statute (KRS) 304.39.12–230.

4

Upon settlement with National Union, Mosley moved for discovery on the bad-faith claims. Arch responded with a motion for judgment on the pleadings, and National Union moved for summary judgment. Mosley, in turn asked the trial court for an opportunity for discovery on their bad-faith claims.

The trial court granted Arch's motion for judgment on the pleadings. The trial court explained that accepting the face of Mosley's complaint as true, Arch's alleged conduct was legally insufficient to prosecute a claim for bad-faith because of violations of KUCSPA, civil conspiracy, and punitive damages. The trial court later granted National Union's summary judgment motion after it found Mosley had failed to establish a cause of action for bad faith under Kentucky law. Additionally, the trial court held that even if additional discovery was granted, no genuine issue of material fact exists because National Union's insureds' liability was never beyond dispute.[3]

Mosley appealed both dismissals, arguing the trial court erred in denying her discovery motion because a proper bad-faith cause of action had been pleaded against Arch and that a genuine issue of fact did exist under the claim against National Union.

Mosley argues to this Court, as he did below, that Arch and National Union acted in bad faith during the two mediations, both together and separately. Mosley insists that the insurance companies leveraged claims by forcing global settlements instead of negotiating each claim individually.

---

[3] "Beyond dispute" is a legal term use to describe one of the elements of a bad faith cause of action in Kentucky.

Mosley also contends that the companies acted in bad faith by sending only one attorney to the second mediation to negotiate for both insurers and their respective insureds. Finally, Mosley claims that Arch and National Union would not settle unless she reduced their settlement request from National Union. Overall, Mosley argues this conduct constituted bad faith and violated the KUCSPA.

## II. ANALYSIS

### A. The trial court did not err in dismissing the third-party bad-faith claims.

Under the KUCSPA, an insurance company must deal in good faith with a claimant in determining whether the company is contractually obligated to pay the claimant.[4] This is true whether the claimant is the company's own insured, or the company insures the claimant's tortfeasor. Kentucky, unlike many states, allows a third-party to bring a cause of action for claims of bad-faith, and this Court explained the standard for such claims in *Wittmer v. Jones*.[5] The Court held that a plaintiff has a "steep burden" of satisfying three requirements before a trial court should find the plaintiff to have brought a viable bad-faith claim.[6] Those requirements are:

> (1) the insurer must be obligated to pay the insured's claim under the terms of the policy;
> (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and

---

[4] *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000).

[5] 864 S.W.2d 885, 890 (Ky. 1993).

[6] *Id.* at 890.

(3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.[7] The failure to show any of these elements eliminates the bad-faith claim as a matter of law.[8]

## B. Standard of Review

In response to Mosley's complaint, Arch filed a motion for judgment on the pleadings based on her failure to state a claim of bad faith under Kentucky law, and the trial court granted the motion.[9] A motion for judgment on the pleadings "should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief."[10] These motions are based purely on whether the plaintiff has stated a cause of action as a matter of law and do not require or permit the trial court to make any findings of fact.[11] Because a trial court's ruling on a motion for judgment on the pleadings is a question of law, appellate review of a judgment on the pleadings is de novo.[12] So in this instance we will review the trial court's

---

[7] *Id.* at 890.

[8] *Id.*

[9] *Kentucky One Health, Inc. v. Reid*, 522 S.W.3d 193, 194 (Ky. 2017) ("Under [Kentucky Rule of Civil Procedure (CR) 12.03], a judgment based on a motion for judgment on the pleadings is reserved for those cases in which the pleadings demonstrate that one party is conclusively entitled to judgment.").

[10] *City of Pioneer Vill. v. Bullitt Cnty. ex rel. Bullitt Fiscal Ct.*, 104 S.W.3d 757, 759 (Ky. 2003).

[11] *James v. Wilson*, 95 S.W.3d 875, 883–84 (Ky. App. 2002). CR 12.03 may be treated as a motion for summary judgment, *Schultz v. Gen. Elec. Healthcare Fin. Servs. Inc.*, 360 S.W.3d 171, 177 (Ky. 2012).

[12] *Scott v. Forcht Bank, NA*, 521 S.W.3d 591, 594 (Ky. App. 2017).

7

decision that Mosley's claim failed to state a claim without deference to the lower courts.

Like Arch's motion, the trial court granted National Union's motion for summary judgment on Mosley's bad-faith claim. We review such grants de novo as "[t]he standard of review on appeal of summary judgment is whether the trial court correctly found there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[13] We therefore review for whether there was a genuine issue of fact bearing on National Union's alleged bad faith conduct under the analysis established in *Wittmer*.

## C. *Wittmer* Analysis

The three elements for a third-party bad-faith cause of action under *Wittmer* are determinative for determining if granting both National Union's and Arch's dispositive motions was appropriate. The bad faith conduct must go beyond a technical violation of KUCSPA, and the plaintiff must allege she suffered actual damage that was outrageous because of the insurance carrier's conduct.[14] Further, the plaintiff's complaint must sufficiently allege that the insurance company acted outrageously towards her.[15] Unless all these factors

---

[13] *Carter v. Smith*, 366 S.W.3d 414, 419 (Ky. 2012) (citing *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010)).

[14] *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997), *as modified* (Feb. 18, 1999), and *holding modified by Hollaway v. Direct Gen. Ins.Co. of Miss., Inc.*, 497 S.W.3d 733 (Ky. 2016).

[15] *Holloway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 738 (Ky. 2016).

8

are present, a trial court may not allow a third party's bad faith claim to proceed to the jury.[16]

### 1. *Plaintiff must show an obligation to pay under the contract's policy.*

The first element Mosley must establish is the insurance company's obligation to pay under the policy. It appears from the arguments raised the existing case law is unclear about what must be shown under *Wittmer*'s first prong. To be clear, an *obligation to pay* requires proof that the insured's policy requires the insurer to pay, not that there is liability under the contract, which is analyzed under *Wittmer*'s second requirement.[17]

Here, as the Court of Appeals stated, Arch had no duty to pay Mosley because of express exclusionary language in the policy.[18] As Arch averred in its response to Mosley's amended complaint, and later again in its motion for a judgment on the pleadings, Arch had no contractual duty to pay the claims against Jean Coal and Loving because Arch's policy expressly excluded "bodily injury to an employee of the insured arising out of and in the course of employment by the insured; or (b) performing duties related to the conduct of the insured's business." Under the policy, the term *employee* included leased

---

[16] *Id.* ("Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury." (citing *United Services Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. App. 2003), *as modified* (June 27, 2003)).

[17] *Id.* ("Beginning with liability under the policy, we think it is important to clarify that realistically there are two distinct questions of law in assessing Direct General's duty to compensate Hollaway.").

[18] The policy's exclusion did not require Arch to cover bodily injury sustained by a leased employee.

employees like Rhett.  The trial court had already determined that Rhett was a leased employee, or an *employee who suffered bodily injury*.  Thus, Arch did not have a contractual obligation to pay under its policy.

National Union conflates the first two prongs of *Wittmer*, and instead focuses most of its argument on persuading the Court that its liability was not beyond dispute, which will be discussed below.  But, for purposes of analyzing Mosley's claim against National Union under the entire *Wittmer* test, Mosley has satisfied the first prong of a third-party-bad-faith claim against National Union, as even the insurer states it never denied Mosley's claim.

Additionally, it should be noted that Mosley's bad faith claim against Arch fails completely at this juncture because Mosley's claim cannot satisfy the first prong of this analysis.  Because of the paucity of guidance in our third-party-bad-faith precedent, we will analyze Mosley's claim against both Arch and National Union under all *Wittmer* elements.

## 2. *Plaintiff must show that the insured's liability was beyond dispute.*

After the plaintiff has shown that the insurance company has an obligation to pay, the plaintiff must establish that the insured's liability is beyond dispute.[19]  An insurer has an obligation to make a good-faith effort in effectuating "prompt, fair and equitable settlements of claims in which [its insured's] liability has become reasonably clear[.]"[20]  This Court has interpreted

---

[19] *Wittmer*, 864 S.W.2d at 890.

[20] KRS 304.12–230(6).

"reasonably clear" to mean "beyond dispute[.]"[21]  But when an insured's liability is unclear, bad-faith claims fail as a matter of law because the insurer has a reasonable basis for challenging the claim.[22]  So, in this instance, unless liability of the parties insured by Arch and National Union was beyond dispute, Mosley's claim must also fail the second prong of the *Wittmer* test.

*Holloway v. Direct General Insurance Company of Mississippi* discussed the beyond-dispute-liability requirement of *Wittmer*.[23]  We found in *Holloway* that because the insurer was not willing to concede liability of its insured, the liability insurer was under no absolute duty to pay the plaintiff's claim.[24]  As stated in *Holloway*, a liability dispute entitles the insurance carrier to forgo any effort to settle and to take a dispute about liability to a jury.[25]  Additionally, the Court in *Holloway* concluded that "settlements are not evidence of legal liability, nor do they qualify as admissions of fault[,]" under Kentucky law.[26]

Arch insured Jean Coal and Loving.  Under the Workers' Compensation Act, Jean Coal could claim immunity from tort liability.  Jean Coal's motion for summary judgment arguing its entitlement to immunity in the wrongful death action was pending at the time Arch and Mosley settled.  So it cannot be said

---

[21] *Coomer v. Phelps*, 172 S.W.3d 389, 395 (Ky. 2005).

[22] *Holloway*, 497 S.W.3d at 739.

[23] *Id.* ("Because Direct General's absolute duty to pay her claim is not clearly established, this alone would be enough to deny her bad-faith claim under *Wittmer*.").

[24] *Id.*

[25] *Id.*

[26] *Id.*

11

that Arch's liability was reasonably clear because its insured may have been immune from Mosley's claims. Further, because Arch's policy excluded bodily-injury coverage for employees, both Jean Coal and Loving had a legitimate basis to contest liability. And while Jean Coal and Loving's liability was not beyond dispute, Arch offered $1 million in settlement consistently throughout the litigation. The only connection to "liability" Arch had was because of its settlement, and as stated, settlements are not evidence of legal liability.

We similarly find that National Union's insureds' liability was not beyond dispute. National Union provided coverage for Dixie Fuel and Rex Coal. National Union's motion for summary judgment contended the liability of its insureds was disputed because of the potential allocation of fault among the parties, including the potential for fault apportioned to Rhett himself. For example, Rex Coal was potentially entitled to immunity. Dixie Coal maintained that it was merely the bailor of the truck Rhett was driving when the accident occurred, and that Jean Coal was liable for its maintenance and use. Finally, because most of the issues in the underlying wrongful-death action had yet to be resolved, it was possible a jury would not apportion fault to Rex Coal and Dixie but instead to other defendants. Dixie Fuel's or Rex Coal's liability was debatable.

In *Messer v. Universal Underwriters Insurance Company,* a panel of the Court of Appeals explained that "before an insurer can be liable for bad faith,

the underlying liability must be established."[27]  In *Messer*, the plaintiff's bad-faith claim failed to survive summary judgment because the plaintiff was unable to show the insured's liability was beyond dispute.  While the plaintiff offered evidence that the insured might be liable, the plaintiff "never eliminated the reasonable possibility that a jury could find [the plaintiff] 100% at fault for colliding with Mountain Ford's vehicle."  Because of uncertainty over the insured's liability, no bad-faith claim could stand as a matter of law against the insurance company.  As National Union argues, it would not be legally obligated to pay Mosley until a jury ultimately determined liability on the part of Dixie Fuel or Rex Coal.  We find the facts as recited in National Union's summary judgment motion make it reasonable for it to challenge liability under Mosley's claim because National Union's insureds' liability was contested, and therefore, Mosley failed to meet the second prong of *Wittmer*.

Mosley argues that *Farmland Mut. Ins. Co. v. Johnson*[28] allows for a bad-faith claim to proceed even where the underlying claim was "fairly debatable."[29] We disagree.  *Farmland* involved a first-party bad faith claim where the insurance company's liability was undisputed and the only issue litigated was the amount owed to the plaintiff.[30]  In fact, the "fairly debatable" language relied on by Mosley refers to the amount of coverage owed to the plaintiff and

---

[27] 598 S.W.3d 578 (Ky. App. 2019).

[28] 36 S.W.3d 368, 374-75 (Ky. 2000).

[29] *Id.* at 376.

[30] *Id.* at 374–75.

not the liability of the insurance company.[31]  As the Court of Appeals in the present case stated, "When liability is clear or 'beyond dispute,' a claim must be paid . . . . But when liability is not clear or disputed, an insurer may pursue its defense and contested liability until its duty under KUCSPA is triggered." We find the circumstances here to be unlike those in *Farmland* because liability and the amount of coverage were uncertain.  Until Arch and National Union's insureds' liability became reasonably clear, the insurers had the right to contest liability.  So no bad-faith claim can succeed as a matter of law.

As the Court of Appeals in *Messer* stated, the "tall burden" of bringing a third-party bad-faith claim:

> requires a claimant to demonstrate it was unreasonable for the insurer to argue the insured's conduct was not a substantial factor in causing the accident.  Kentucky courts will not allow a jury to apportion fault to persons whose conduct was not a substantial factor in causing an accident.  The insurer can challenge the claimant's ability to meet that burden by filing a motion for summary judgment.[32]

We find that Arch and National Union properly challenged Mosley's ability to meet her burden of proof.  Arch did not act unreasonably in challenging the claimant's ability to meet that burden because its policy provided an exclusion for injury caused by its insureds.  And it was not unreasonable for National Union to contest liability where its insureds' fault was unclear because of the

---

[31] *Id.* at 376.

[32] *Messer,* 598 S.W.3d at 588.

14

complex relationships among the parties and the potential defenses asserted by each.

### 3. *The plaintiff must show that the insurer's conduct resulted in actual damage and was outrageous.*

Mosley's claim against Arch and National Union also fails because the alleged bad-faith conduct was not outrageous, and no proof of actual damage has been shown. The final requirement under *Wittmer* for a third-party bad-faith claim is that the plaintiff show that the insurance company's conduct was outrageous and caused the plaintiff actual damage.[33] The alleged conduct must go beyond negligence and justify the imposition of punitive damages.[34] In *Holloway*, we stated that "absent evidence of punitive conduct, an insurer is entitled to a directed-verdict for any bad faith claims levied against it."[35]

We find the plaintiffs have failed to show they suffered actual damage and that the alleged conduct by the insurance companies was outrageous. Mosley has not stated any damage amount owed because of the alleged bad faith conduct by Arch or National Union. The allegations of bad faith include Arch's refusal to pay its $1 million policy limit. But a mere two weeks after the last mediation, the parties settled, and Mosley received the amount. Arch offered its policy limits in two mediations, but Mosley refused. Additionally, National Union later settled the claims against its insureds for $2 million. Mosley's amended complaint does not allege any damage caused by Arch and

---

[33] *Id.* at 592*; Zurich Ins. Co. v. Mitchell,* 712 S.W.2d 340 (Ky. 1986).

[34] *Wittmer*, 864 S.W.2d at 890.

[35] *Messer*, 598 S.W.3d at 592 (quoting *Holloway*, 497 S.W.3d. at 739).

15

National Union's conduct. At most, their conduct caused a delay in settlement, but we have held that mere delay in settlement does not rise to bad-faith conduct.[36]

Further, the alleged conduct does not appear outrageous or in reckless indifference to Mosley's rights. KUCSPA requires the insurers to act reasonably in negotiating claims.[37] To find bad faith, the evidence of bad faith must be sufficient to establish that a tort has occurred.[38] Mosley specifically argues that Arch and National Union unfairly leveraged claims by making only global offers of settlement and that Arch acted in bad faith by offering only global offers of settlement because it would only pay its policy limit for Jean Coal if Loving was released. We find though, as did the courts below, this conduct is not prohibited by the KUCSPA.

KRS 304.12-230(13) defines prohibited leveraging as a situation when an insurance company, when liability is clear, attempts to force settlement under one portion of the policy to influence settlement under another portion of the policy. Here, however, Arch was not conditioning the settlement of its $1 million policy limit to avoid another portion of the policy. Instead, because Jean Coal and Loving were both defendants insured by Arch, both of which Arch owed a duty to indemnify, it only conditioned a settlement of a sum that would exhaust policy limits on the condition that both insureds receive a full

---

[36] *Zurich Ins. Co. v. Mitchell,* 712 S.W.2d 340 (Ky. 1986).

[37] *Holloway*, 497 S.W.3d at 739.

[38] *Guaranty Nat. Ins. Co. v. George,* 953 S.W.2d 946, 949 (Ky. 1997).

16

release of liability in exchange for such payment. This does not constitute leveraging. Of course, KRS 304.12-230(13) only applies if the insurer's liability is reasonably clear, which, as discussed above, was not the case for either Arch or National Union.[39]

Further, we do not find it that it was outrageous or improper for one attorney to represent Arch and National Union at the second mediation. As the Court of Appeals explained, the impropriety of the conduct Mosley argues is a conflict of interest, but when all parties had agreed to joint representation, as was the case here, no issue exists. Such conduct does not rise to a level of bad faith. Arch and National Union tried to settle at both mediations. Mosley refused, which she had the right to do. She cannot now complain of the delay in settlement when she refused to budge from her settlement demand.

## D. The Court of Appeals did not err in affirming the trial court's denial of Mosley's discovery motion.

Mosley argues the Court of Appeals erred in affirming the trial court's denial of her discovery motion because the denial prevented her from proving her bad-faith claim. The trial court stayed discovery on the bad-faith claims until the underlying wrongful-death action was resolved. When the trial court granted Arch and National Union's dispositive motions against the third-party bad-faith claim, the court also denied Mosley's discovery motion.

---

[39] KRS 304.12-230(13) ("Failing promptly to settle claims, where liability has become reasonably clear, under one (1) portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage").

17

The trial court denied Mosley's discovery motion on the grounds that the discovery Mosely sought in the motion could only lead to evidence of the insurer's mediation conduct which is classed as confidential litigation conduct and is inadmissible under Kentucky Rule of Evidence (KRE) 408. Further, the trial court reasoned that even if mediation conduct were admissible, the evidence plaintiff sought would not save her failed bad-faith claims because she had not met the threshold requirement of pleading the existence of a genuine issue of material fact to support her bad-faith allegations. Finally, the trial court concluded, given the length of time this litigation had been pending, Mosley had ample opportunity to conduct discovery. The Court of Appeals accepted the trial court's reasoning and affirmed.

Mosley argues here that the trial court erred when it granted National Union's summary judgment motion and that the trial court abused its discretion by denying discovery because the bad-faith conduct evidence she sought was not rendered inadmissible by KRE 408. We review a trial court's evidentiary rulings for abuse of discretion.[40] We will reverse the ruling if it was arbitrary, unfounded in law, or unreasonable.[41]

The matter before us invites examination of the complex interplay between KRE 408 and bad-faith claims. KRE 408 reads:

> Evidence of: (1) Furnishing or offering or promising to furnish; or (2) Accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, *is not*

---

[40] *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

[41] *Id.* at 581.

18

*admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.* This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. *This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.*"[42]

This Court in *Knotts v. Zurich Ins. Co.*,[43] addressed admissible evidence in bad-faith cases.[44] *Knotts* involved potential bad-faith litigation conduct by an insurance company as compared to the insurers' pre-litigation conduct at issue in the present case.[45] The insurer in *Knotts* argued that because the alleged conduct occurred after litigation had commenced, the KUSCPA's protections against bad-faith conduct did not apply.[46] But a majority of this Court found that both evidence of the insurance company's settlement behavior and evidence of the litigation tactics deployed by the insurance company were admissible as an exception to the general rule that evidence of settlement negotiations is excluded.[47] We reasoned that KRS 304.12–230 did

---

[42] (Emphasis added.)

[43] 197 S.W.3d 512 (Ky. 2006).

[44] *Id.* at 514.

[45] *Id.* at 515.

[46] *Id.* at 516.

[47] *Id.* at 518 ("Recognizing the existence of a continuing duty of good faith, however, is not the end of our inquiry. We must also address the further question of what sorts of post-filing conduct by an insurer will be admissible in a bad faith action. This is truly an issue of first impression in this state, so we turn to other jurisdictions for guidance. Treatment of this issue can be divided broadly into two camps: (1) allowing only evidence of the insurance company's settlement behavior and (2) allowing that evidence plus evidence of the litigation tactics, strategies, and techniques employed on behalf of the insurance company.").

not confine its applicability to pre-litigation conduct, and because the statute applies to claims, the duty of good faith applies to an insurer so long as a claim is in play.[48]  So evidence of an insurer's settlement behavior "throughout the litigation may be examined and presented in order to establish an insurer's bad faith to encourage good faith and fair dealing on behalf of all parties."[49]

Even more relevant to the present case is our discussion in *Knotts* concerning the type of conduct admissible to prove that a party was acting in bad faith.[50]  As we explained, two different classes of potentially admissible evidence arise in bad-faith litigation.[51]  The first class consists of evidence of the insurance company's settlement behavior, and the second class includes evidence of the litigation tactics, strategies, and techniques employed on behalf of the insurance company.[52]

We held in *Knotts* that public policy forbids admitting evidence of the second class because admission would disrupt the judicial process and impede the insurer's vigorous advocacy on behalf of the insured.[53]  Our opinion stated:

> The most serious policy consideration in allowing evidence of the insurer's post-filing conduct is that it punishes insurers for pursuing legitimate lines of defense and obstructs their right to contest coverage of dubious claims . . . . [I]f defending a questionable claim were actionable as bad faith,

---

[48] *Id.*

[49] *Id.* (*see Hamilton Mut. Ins. Co. of Cincinnati v. Buttery,*220 S.W.3d 287 (Ky. App. 2007).

[50] *Knotts,* at 518.

[51] *Id.*

[52] *Id.* at 519.

[53] *Id.*

20

it would impair the insurer's right to a zealous defense and even its right of access to the courts.[54]

We explained that the difference in the two classes of evidence is that the Rules of Civil Procedure provide remedies for discovery abuses in matters that fall into the second-class conduct, but no formal procedural rules govern the first class.[55] For example, when a party refuses to turn over certain evidence under a claim of privilege, the party seeking to discover the evidence at issue may seek the intervention of the trial court for procedural relief. Because of the availability of trial court intervention and procedural relief for the alleged offensive conduct, the *Knotts* court would treat the above conduct as inadmissible evidence in the bad-faith context because only offensive conduct for which there is no available procedural relief can support a bad-faith claim. In contrast, *Knotts* points out, "If a litigant refuses to settle or makes low offers, his adversary cannot avail himself of motions to compel, argument, or cross-examination to correct his failure."[56]

Because there is no recognized process for trial court intervention or procedural relief available for bad-faith settlement conduct, evidence of such conduct may be admitted as proof in a bad-faith claim. But even then, the trial

---

[54] *Id.* at 520.

[55] *Id.* ("The Rules of Civil Procedure provide remedies for the latter. To permit the jury to pass judgment on the defense counsel's trial tactics and to premise a finding of bad faith on counsel's conduct places an unfair burden on the insurer's counsel, potentially inhibiting the defense of the insurer. An insurer's settlement offers, on the other hand, are not a separate abuse of the litigation process itself.").

[56] *Id.* at 523.

21

court must be chary of the admission of proper settlement conduct as evidence of bad faith. The *Knotts* court worried that admitting proper settlement conduct in a bad-faith claim would create the same policy problem that requires litigation conduct to be inadmissible because the jury would be able to scrutinize the insurer's acts and then, "without the assistance of insight into litigation techniques, could second guess the defendant's rationales for taking a particular course."[57] So only evidence of improper settlement behavior is admissible. Like *Knotts*, we caution future litigants and courts alike that even if the proof is of the first class and the conduct is purely settlement conduct, it is not automatically admissible.[58] In bad-faith actions, there is a heightened concern about the potential of prejudice to the insurer.[59] The trial court—the gatekeeper charged with excluding prejudicial evidence under KRE 403—should be on high alert when deciding what evidence may be admitted.[60]

In summary, *Knotts* established that for evidence of bad faith to be introduced it must be evidence of the insurer's *settlement behavior* that occurred throughout the litigation and the proffered evidence must be more highly probative than prejudicial, and, even then, the courts must cautiously

---

[57] *Id.* at 520.

[58] *Id.* at 523 ("Such evidence is not automatically admissible. Evidence of post-filing conduct may often be of limited relevance to a claim of bad faith and raises distinct concerns about prejudice to the insurance company.").

[59] *Id.* ("While resolution of the tension between the competing considerations of probative value and prejudice is an unquestioned requirement of the law of evidence, *see* KRE 403, we note that there has been heightened concern about this issue, as it applies to post-filing conduct, since courts began considering such evidence of bad faith.").

[60] *Id.*

admit it. We find the trial court in the present case properly denied Mosley's discovery motion because the evidence Mosely sought from Arch and National Union, if any was produced, would not be admissible to prove her bad-faith claim. We, too, find the evidence inadmissible but for different reasons than the lower courts. The lower courts reasoned that the discovery motions would only produce evidence of inadmissible litigation conduct and therefore discovery should be denied. We find, though, that Mosley sought to discover evidence of settlement conduct, not litigation conduct, but because she has alleged only that the discovery will uncover evidence of proper settlement conduct, her motion was properly denied. We will explain our reasoning using the *Knotts* rubric.

To begin, we note the evidence sought was evidence of conduct that occurred throughout the litigation, a time when both insurers had a duty to act in good faith. The conduct Mosley sought to discover occurred long after the commencement of the wrongful-death litigation, and no party disputes that the insurers were then under an obligation to deal in good faith.

Next, we are to decide if the evidence Mosley sought to discover would be probative of Arch's and National Union's litigation techniques, which are not discoverable, or settlement conduct, which is discoverable. We find that Mosley sought to discover evidence of both classes. For example, Mosley sought to obtain the claim file compiled by National Union. Any information in National Union's claim file would potentially be privileged—either as work-product or attorney-client—and, if the trial court had ruled it discoverable,

23

Mosley would have had a potential remedy through trial court intervention if National Union refused production for any reason. Because of the availability of trial court oversight, under *Knotts* the production of the claim file would be classed as part of the litigation process and off limits to prove Mosley's bad-faith claim.

Significantly, though, we find that the discovery sought of the specific interactions between the parties at the settlement conversations to be of the first-class of evidence discussed in *Knotts*. Kentucky's Model Mediation Rules state that "[m]ediation should be regarded as settlement negotiations for purposes of [KRE] 408."[61] There is no procedural device under the law to remedy National Union's and Arch's potential bad-faith conduct that occurred at these mediations. For example, if the companies had been unfairly leveraging claims in the mediation process, as Mosley asserts, the only way to show this would be through evidence about the actual mediations. So Arch's and National Union's mediation conduct is considered settlement conduct under *Knotts* for purposes of evidence available to prove Mosley's bad faith claim and is potentially admissible.

While some of the evidence Mosley seeks is of the first-class, we find it is ultimately inadmissible because it has no probative value. As instructed by *Knott*s, even if the evidence is of the first-class and not litigation conduct, it is

---

[61] Rule 12.B. Model Mediation Rules were adopted by the Supreme Court of Kentucky in the "Order Amending Rules of the Supreme Court," 99-1, effective February 1, 2000.

not to be automatically admitted.  Instead the trial court is to look closely at what the evidence will show if admitted and carefully assess if it is probative of a bad-faith claim.[62]  As the trial court stated, Mosley only alleges proper claim negotiation techniques, not improper leveraging of claims.  So even if the evidence was admitted, it would not be probative that the insurers acted in bad faith because Mosley's discovery motion only sought more evidence of permissible settlement negotiation techniques, which cannot be probative of bad faith in a disputable underlying claim.  In contrast, if Mosley's discovery motion had alleged that the evidence would show, for example, that National Union and Arch conspired against Mosley or that they ever denied Mosley's underlying bad-faith claim, then discovery would be permitted because this would be improper settlement conduct that potentially rises to bad-faith conduct.  But because Mosley only alleges that discovery will provide more evidence of proper settlement conduct, the discovery motion was properly denied.

Mosley relies on several cases where settlement conduct was admitted, but that evidence arises in the context of a trial, the trial court having denied a defense motion for summary judgment in which the trial court had analyzed the sufficiency of evidence as a matter of law.  For example, in *Hamilton Mut. Ins. Co. of Cincinnati v. Buttery*,[63] the admitted evidence included proof that the insurer had tried to find ways to evade the plaintiff's claims, that it monitored

---

[62] *Knotts*, 197 S.W.3d at 523.

[63] 220 S.W.3d 287.

the plaintiff's financial situation in order to leverage its own bargaining position, and that the company intended to refuse to satisfy the claim until the plaintiff released the company from liability.[64]

The evidence Mosley sought was neither relevant or probative of bad faith because she only sought discovery of proper settlement conduct. Therefore, any evidence sought would be insufficient to support her claim as a matter of law. For this reason, Mosley's discovery motion was properly denied as it would not produce anything relevant to Mosley's bad-faith claim.[65]

**E. Mosley's Civil-Conspiracy Claim was properly dismissed.**

Mosley's amended complaint also alleged a claim of civil conspiracy against Arch and National Union. Although appellees argues this was not preserved, we disagree, as the trial court's grant of Arch's motion for judgment on the pleadings and National Union's motion for summary judgment were also dispositive of Mosley's civil-conspiracy claim. A civil-conspiracy claim requires the plaintiff to show "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a

---

[64] *Id.* at 293 ("Proof indicating that Hamilton Mutual's entire investigation was focused on finding a way to evade satisfying his claim . . . the company monitored his financial struggles closely so as to leverage its bargaining position; and that Hamilton Mutual intended to refuse to satisfy the claim until Buttery released the company from liability arising from its misconduct.").

[65] *Hamilton Mut. Ins. Co. of Cincinnati v. Barnett,* Nos. 2007-CA-000029-MR & 2007-CA-000064-MR, 2008 WL 3162321, at *3 (Ky. App. Aug. 8, 2008) ("Hamilton Mutual attempts to define all its settlement discussions as litigation conduct. We, however, agree with the trial court's sound reasoning that most of the alleged litigation conduct was actually settlement discussions, and is therefore admissible both before and after the December 6, 1996, order.").

lawful act by unlawful means."[66] The burden lies with the plaintiff to prove every element of conspiracy.[67] We find Mosley was unable to meet the high burden of proof as a matter of law.

For her civil-conspiracy claim, she only alleges that Arch and National Union used one attorney during a mediation session. This alone does not establish conspiracy. And, as the Court of Appeals states, "Mosley did not establish a scintilla of evidence of an unlawful agreement to perform an unlawful act" and failed to "provide a factual basis of an agreement to act overtly unlawful in furtherance of the agreement." Because Mosley did not provide the trial court with any evidence that Arch and National Union had agreed to act against her in a tortious manner, Arch and National Union's dispositive motions were appropriately granted. Finally, as the trial court stated, Plaintiff's civil-conspiracy claim is predicated on her ability properly to assert bad-faith claims, which she has failed to do.[68]

## III.  CONCLUSION

For the reasons discussed above, we affirm the decision of the Court of Appeals.

All sitting. All concur.

---

[66] *Peoples Bank of N. Kentucky, Inc. v. Crowe Chizek and Co. LLC*, 277 S.W.3d 255, 261 (Ky. App. 2008) (quoting *Smith v. Bd. of Edu. of Ludlow*, 264 Ky. 150, 94 S.W.2d 321, 325 (1936)).

[67] *James v. Wilson*, 95 S.W.3d 875, 896–902 (Ky. App. 2002).

[68] *James*, 95 S.W.3d at 896.

27

COUNSEL FOR APPELLANTS:

Kellie Marie Collins
J. Dale Golden
Golden Law Office, PLLC

Kenneth R. Friedman
Friedman Rubin

Jeffrey Reed Morgan
Jeffrey R. Morgan & Assoc PLLC


COUNSEL FOR APPELLEE, ARCH SPECIALTY FIRE INSURANCE COMPANY:

Mindy Barfield
Shadette Page Johnson
Dinsmore & Shohl LLP

COUNSEL FOR APPELLEE, NATIONAL UNION FIRE INSURANCE COMPANY:

Christopher S. Burnside
Christopher Glade Johnson
Griffin Terry Sumner
Frost Brown Todd LLC

COUNSEL FOR AMICUS CURIAE, INSURANCE INSTITUTE OF KENTUCKY:

Ronald Lee Green
Green Chesnut & Hughes PLLC